UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**"IN ADMIRALTY"**

CASE NUMBER: 1:25-cv-22149-JB

FAST RESPONSE MARINE
TOWING & SALVAGE, LLC,

      Plaintiff,

v.

M/V TNT, a 2023 Tecnomar
Lamborghini 63, *in rem*, and,
COMMERCIAL FITNESS
CONCEPTS LLC, *in personam*,

      Defendants.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATUS REPORT [DE 68]

COMES NOW, Plaintiff, FAST RESPONSE MARINE TOWING & SALVAGE, LLC, by and through undersigned counsel, hereby submits this Response to Defendant's Status Report [DE 68], and states as follows:

1.     This Response arises from several issues and convoluted representations by Defendants regarding complications following the untimely death of Mr. Brandon Outlaw, the purported sole owner and sole representative of Defendant Commercial Fitness Concepts LLC ("CFC").

2.     The following timeline of events illustrates the present issue surrounding the pending Motion for Interlocutory Sale of the Defendant Vessel:

a.  On November 19, 2025, the Court held a Hearing on CFC's Motion to Set Release Bond [DE 47]. At the Hearing, the Court Ordered that the bond was set at $776,000. This was later memorialized in a written Order [DE 48].

b.  After waiting 3 weeks for a bond to be posted, on December 8, 2025, Plaintiff filed its Motion for Interlocutory Sale of the Defendant Vessel [DE 49].

c.  On December 17, 2025, CFC opposed Plaintiff's Motion and represented in its Response that on "December 12, 2025, Defendants advised that the bond would be secured early next week" and requested additional time to do so [DE 51].

d.  In its subsequent filings, CFC continued to suggest needing additional time and advised the Court that it was "close" or "in the final stage" to securing a bond. *See* [DE 55] (December 29, 2025); *see also* [DE 57] (January 5, 2026).

e.  On January 12, 2026, CFC filed a Motion for Stay The Case For Limited Duration [DE 60] in light of Mr. Outlaw's passing, which was granted by the Court for a period of 30-days (until February 12, 2026) [DE 62].

f.  In [DE 62], the Court also required Defendant to advise of any developments with respect to determining any successor in interest during the 30-day stay. See [DE 62].  The Court likewise ruled that it would address the sale of the vessel after the 30-day period.  *Id.*

g.  Plaintiff notes that the Defendants failed to provide any updates to the Court or to Plaintiff on February 12, 2026, the date the stay was supposed to be lifted, and as otherwise required by the Court's Order [DE 62].  Only following the Court's *sua sponte* review of the record, did the Court issue a follow-up Order requiring a joint status report by February 20, 2026 [DE 65].

h.  Following the expiry of that additional time period, CFC requested an additional 30 days, with the alleged purpose of identifying an appropriate representative.  See [DE 66] (February 20, 2026).  Notwithstanding, CFC also noted that a meeting was already scheduled for March 4, 2026 regarding the future management and representation of CFC.[1]  *Id.*

i.  The Court Order issued on February 24, 2026 partially granted Defendants' request, granting a continued stay until March 9, 2026.  See [DE 67].  The Court Order likewise required Defendant to provide an update on any developments.  *Id.*

j.  Having not heard from Defendant following the alleged March 4, 2026 meeting, and on March 6, 2026 at 10:50 AM, the undersigned reached out to Defendant's counsel reminding them of their obligation to keep Plaintiff and the Court apprised of status and developments of their locating an authorized representative and indicating that the same had not occurred yet despite the upcoming deadline.  Instead of responding directly to Plaintiff, Defendant chose to file a unilateral status report requesting an additional 30-day stay of the case, necessitating the instant Response and Opposition to a further stay of the case.[2]

3.  The vessel was arrested on May 21, 2025.  As of today, it has been **9 months and 16 days** since the Vessel was arrested.  Courts treat the **four-month mark** following **arrest** as sufficient for interlocutory sale. *See M/V Family Time*, 2024 WL 828124, at *2 (citations omitted);

---

[1] It is unclear why Defendants needed thirty (30) days, when a meeting regarding the Corporate Defendant was already scheduled to occur twelve (12) days later.

[2] Likewise, Defendants did not confer regarding this requested relief with Plaintiff as required by this Court's Local Rules.

*see also* Defendants Response [DE 51] at Pg. 2 (citing 2009 U.S. Dist. LEXIS 114086 to reflect the general practice is to allow vessel owners approximately *four months* to bond a vessel)(emphasis added). At present, and without even considering the recent representations by Defendant, the time period provided to Defendants to post a bond has been well over double what is typically permitted, with no real timetable set or even suggested as likely for the actual posting of the bond based upon Defendant's most recent status report [DE 68].

4.      As of today, March 9, 2026, it has been **Three and a Half Months (110 days)** with no bond posted since the Court Ordered the bond amount and Defendants have failed to provide any evidence of any bond likely to be posted.

5.      Defendant's Status Report [DE 68] explicitly states that they "participated in a meeting with the **<u>acting representatives</u>** of Defendant Commercial Fitness Concepts, LLC."  As such, it is clear that Defendant CFC has identified at least one individual who has authority to act on behalf of the Corporate Defendant.

6.      Despite Defendant's Status Report [DE 68] stating that they are working with acting representatives, the basis for their request for additional time is the need to "identify an appropriate corporate representative." See [DE 68].  In Plaintiff's view, they have either identified an acting representative or not. Accordingly, at least some part of the Defendants' Status Report seems disingenuous or evasive.

7.      Plaintiff views Defendant's current request for a continued stay solely as a delay tactic.

8.      Further, while Defendants' other reason stated in support for an additional stay is that they need time for "coordination" of next steps in trying to secure a bond – which further implies that there is no approximate or anticipated date by which a bond could ever be secured, let

alone posted. Accordingly, with no end in sight, and being apparent that there is indeed an acting representative of CFC, no additional leeway should be given.

9.      Plaintiff opposes an additional 30-day stay.  Plaintiff maintains its position that was stated previously in its Response to Court Order [DE 58] Continuing to Seek Relief Stated in its Motion for Interlocutory Sale [DE 49], its Reply in Support of its Motion for Interlocutory Sale [DE 52], and in Plaintiff's Responses to the Court's various Court Orders. See [DE 61], [DE 66].

10.      Specifically, Plaintiff reiterates its position that 1) Defendants have not posted a bond to date, 2) the Vessel has been under arrest since May 2025 and the Defendants' delay (both actual and unintended) continues to result in continued deterioration of the vessel, as well as, additional *custodia legis* expenses.

11.      Plaintiff further states that it remains unlikely that a bond will otherwise be posted or that any letter of credit would be issued necessitating the interlocutory sale of the vessel.  If there were other options for Defendant, such as "exploring all viable alternatives to aggregate the funds" as Defendant suggests, then it is entirely unclear why these were not explored in the several **months** that Defendant had to post a bond prior to Mr. Outlaw's passing.

12.      Plaintiff maintains that Defendants would not be prejudiced by the Court Ordering the sale of the vessel.  See *Naval Logistic, Inc. v. M/V Family Time*, No. 23-22379-CIV, 2024 WL 828124, at *2 (S.D. Fla. Feb. 27, 2024), aff'd sub nom. *Naval Logistics, Inc. v. M/V FAMILY TIME*, No. 24-13172, 2025 WL 1733999 (11th Cir. June 23, 2025) ("The interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the proceeds of the sale, with all of the constitutional safeguards necessitated by the in rem process.").

13.      As such, Plaintiff maintains its request to increase the Court Ordered bond amount to be reflective of the increase in the *custodia legis* costs incurred due to Defendants' delays in

posting a bond.

14.     Additionally, Plaintiff further continues its request to increase the bond amount from $776,000 (which contemplated $56,000.00 in *custodia legis* costs) **to $840,089.40** (to reflect an increase in the *custodia legis* costs incurred by Plaintiff – an estimated additional total of $64,089.40 through March 23, 2026). Although, at this stage, that increase likewise would not cover all additional *custodia legis* costs which would continue to accrue up until the time the vessel is actually sold which, at this stage, is unlikely to occur before March 23, 2026.[3]

15.     Therefore, Plaintiff continues to respectfully request this Court to:

a.   Grant the relief Plaintiff seeks in its Motion for Interlocutory Sale [DE 49]; and

b.    Order an increase to the previously issued bond amount to reflect the additional *custodia legis* fees incurred by Plaintiff due to Defendants' delay in posting a bond in the amount of at least $64,089.40 (making the new bond amount needed to be posted by Defendants to be at least $840,089.40); and

c.   Order a minimum bid amount for the sale of the subject vessel of at least the amount of the proposed increased bond; and

d.   Order a date certain for the sale to occur as soon as practicable.

e.   For any other relief the Court deems just and proper.

---

[3] Plaintiff asks the Court to note that *custodia legis* costs continue to accrue at $342.55 per day **plus** sales tax of 7% - and otherwise reflect a rate of approximately ~$11,362.38 per month. Additionally, Plaintiff has been in contact with the U.S. Marshal who will likely seek additional funds that continue to accrue as it relates to the Vessel, with Plaintiff's last payment being received on or around February 2, 2026 and last request for an update on developments in the case occurring on March 3, 2026.

Respectfully submitted,

COLE, SCOTT & KISSANE, P.A
*Counsel for Plaintiff, Fast Response*
*Marine Towing & Salvage, LLC*
222 Lakeview Avenue, Suite 500
West Palm Beach, FL 33401
Telephone (561) 612-3479
Facsimile (561) 683-8977
Primary e-mail: barry.postman@csklegal.com
Secondary e-mail: justin.edell@csklegal.com
Alternative e-mail: patricia.martel@csklegal.com

By:    */s/ Justin D. Edell*
         BARRY A. POSTMAN
         Florida Bar No.: 991856
         JUSTIN D. EDELL
         Florida Bar No.: 105105


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of March, 2026, I electronically filed the foregoing document with the US District Court, Southern District of Florida, using the CM/ECF system which will send a notification of such filing to all counsel of record.


By:   */s/ Justin Edell*
         BARRY A. POSTMAN
         Florida Bar No.: 991856
         JUSTIN D. EDELL
         Florida Bar No. 105105