

EXHIBIT

A

# LOAN AGREEMENT

This Loan Agreement (this "Agreement"), made and entered into effective as of November 26, 2024, by and between COMMERCIAL FITNESS CONCEPTS LLC, an Oklahoma limited liability company (collectively, whether one or more, the "Borrower"), BRANDON OUTLAW (collectively, whether one or more, the "Guarantor") and BRIDGECAP EQUITIES LLC ("Lender").

## RECITALS:

Borrower has requested that Lender provide financing to Borrower, and Lender is willing to make a loan to Borrower subject to the terms and conditions set forth in this Agreement;

NOW, THEREFORE, for good and valuable consideration contained in this Agreement, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, agree to be bound as follows:

## *ARTICLE I*
## LOAN AND NOTE

1.1    LOAN. Lender is willing to make a loan in the original principal amount of TWO MILLION AND NO/100 DOLLARS ($2,000,000.00) (the "Loan") to Borrower subject to the terms and conditions contained in this Agreement.

1.2    NOTE. Borrower has executed and delivered to Lender that certain Note (the "Note"), dated of even date herein, which evidences the indebtedness of Borrower to Lender in the original principal amount of TWO MILLION AND NO/100 DOLLARS ($2,000,000.00). The Note shall bear interest at the fixed rate of three and one-half percent (3.50%) per month, in accordance with the terms of the Note. The term "Note" as used in this Agreement shall be inclusive of all future renewals, extensions, increases, substitutions and other modifications of the Note.

1.3    AUTOMATIC DEBIT. Borrower hereby authorizes Lender to automatically debit each and every regularly scheduled monthly principal and interest installment due under the Note from Borrower's business checking account, under such terms and conditions as Borrower and Lender may agree in writing.

## *ARTICLE II*
## CONDITIONS OF LENDING

2.1    CONDITIONS PRECEDENT. The obligation of Lender to make the Loan to Borrower is expressly subject to the performance by Borrower and Guarantor of all their obligations under this Agreement and to the following further conditions:

(a)    Borrower and Guarantor shall execute and deliver to Lender this Agreement, the Note, and all documents, affidavits, certifications, guaranties or other agreements evidencing or otherwise related to the Loan (collectively, the "Loan Documents") which may be required in the sole and absolute discretion of Lender;

(b)    All representations and warranties of Borrower and Guarantor as set forth in this Agreement,

the Note and the Loan Documents are true and correct;

(c)     No condition or event exists or has occurred which would constitute an Event of Default under this Agreement, the Note or the Loan Documents;

(d)     No material adverse change has occurred in the financial condition of Borrower or Guarantor since the date of the most recent submission of Financial Information (defined below) to Lender;

(e)     Borrower has paid all fees and other charges due in connection with the Loan.

(f)     Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Loan Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require; and

(g)     Borrower shall provide such title reports, surveys, environmental reports, tax reports, insurance certificates, leases, agreements, UCC search reports, beneficial ownership information, "know your customer" information, and the like, as may be requested by Lender, as applicable, in its reasonable discretion.

## *ARTICLE III*
## REPRESENTATIONS AND WARRANTIES OF BORROWER AND GUARANTOR

Borrower and Guarantor, understanding that Lender is relying upon Borrower's and Guarantor's representations and warranties set forth below in making the Loan, represent and warrant to Lender as follows:

3.1     POWER AND AUTHORIZATION.   Borrower and Guarantor have duly authorized the execution and delivery of this Agreement, the Note, and the Loan Documents, and the execution and delivery to Lender thereof will not violate any applicable law or agreement to which Borrower or Guarantor is a party to or may be bound or affected by.

3.2     BINDING AGREEMENTS. This Agreement, the Note and the Loan Documents constitute legal, valid and binding obligations of Borrower and Guarantor which are enforceable against the Borrower and Guarantor by Lender.

3.3     VALID ORGANIZATION AND GOOD STANDING.   For any Borrower or Guarantor which is an entity, they are duly organized, validly existing and in good standing under the laws of the state(s) in which they were formed and authorized to conduct business, have the full power and authority to carry on its business operations and are duly licensed or qualified under the laws of each jurisdiction in which they operate. Borrower and Guarantor further represent and warrant that their employees and agents have all required licenses, registrations, approvals and other authority as may be necessary to operate and perform its business operations.

3.4     OWNERSHIP INTERESTS. All ownership interests of Borrower, including, but not limited to, membership interests, stock, options, warrants and all other agreements affecting the ownership, control or voting rights of such ownership interests of Borrower are properly and accurately reflected in this Agreement, the Note and the Loan Documents.

3.5     NAMES AND ADDRESSES.  Except as disclosed in the Financial Information (defined below) or otherwise disclosed and consented to by Lender in writing, Borrower and Guarantor have neither been known by any other names (including tradenames) nor have Borrower or Guarantor been located at or operated from any addresses other than those set forth in this Agreement, the Note and the Loan Documents.

3.6     FINANCIAL CONDITION.  The reports, disclosures, statements and other financial information (collectively, the "Financial Information") submitted by Borrower and Guarantor in writing to Lender in connection with the Loan fairly and accurately reflect the financial condition of Borrower and Guarantor for the periods defined therein.  No material adverse changes have occurred in Borrower or Guarantor since the submission of the most recent Financial Information to Lender.  Except as disclosed in the Financial Information or otherwise disclosed and consented to by Lender in writing, Borrower and Guarantor (i) have neither incurred any debts, liabilities or other obligations, nor committed to incur any debts, liabilities or obligations, except in the ordinary course of business or in the course of individual and personal affairs; (ii) have no liabilities, direct or contingent; (iii) have made no investments in, advances to, or guaranties or obligations of any other company, person, firm, corporation, or other entity; (iv) are neither subject to any judgment, nor are there any liens, encumbrances or security interests outstanding against them or the Collateral (as defined below); (v) have not been materially or adversely affected in any way by any casualty, strike, lockout, pending or threatened labor dispute or similar occurrences or grievances.

3.7     TAXES.  All of Borrower's and Guarantor's taxes, assessments, and other governmental charges have been paid in full, except those which are not yet due and payable.  All tax returns and reports that are or were required to be filed, have been filed and are accurate in all respects.

3.8     LITIGATION.  Except as disclosed in the Financial Information or otherwise disclosed and consented to by Lender in writing, there is no litigation, investigation, proceeding, claim, dispute or other similar action pending or threatened against Borrower or Guarantor.

3.9     COLLATERAL.  Except as disclosed in the Financial Information or otherwise disclosed and consented to by Lender in writing, Borrower and Guarantor, as the case may be, own free and clear title to the Collateral (defined below) securing the Loan, apart from liens for taxes not presently due and payable and the liens or security interests in favor of Lender.  Borrower and Guarantor have not entered into, granted or permitted the filing or attachment of any liens or security interests against the Collateral that would be prior to, or that may in any way be superior to, Lender's rights in and to the Collateral.  Borrower and Guarantor further represent and warrant that title to all Collateral securing the Loan are held in Borrower's and/or Guarantor's exact legal name and are properly reflected in the Loan Documents.

3.10    HAZARDOUS SUBSTANCES.  Except as disclosed in the Financial Information or otherwise disclosed and consented to by Lender in writing, (i) there has been no use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any Hazardous Substance (as defined below) by, on, under, about or from any of the Collateral securing the Loan in violation of applicable Environmental Laws; and (ii) there is no threatened or pending claim, action, investigation, or proceeding seeking to enforce any right or remedy against Borrower, Guarantor or any Collateral securing the Loan under any Environmental Laws (as defined below).  Borrower and

Guarantor have not filed any notice under any federal or state law indicating past or present treatment, storage or disposal of Hazardous Substances and none of the operations of Borrower or Guarantor are the subject of federal or state litigation or proceedings, or of any investigation evaluating whether any remedial action involving a material expenditure is needed to respond to any improper treatment, storage, recycling, disposal or release into the environment of any Hazardous Substance. Borrower and Guarantor do not transport any Hazardous Substances except as previously disclosed in the Financial Information. All notices, permits, licenses, or similar authorizations, if any, required to be obtained or filed in connection with the operation of Borrower's business and the use of any leasehold property or real property pledged as Collateral for the Loan, including, without limitation, past or present treatment, storage, disposal or release of a Hazardous Substance or solid waste into the environment, have been duly obtained or filed. The representations and warranties contained herein are based on Borrower's and Guarantor's due diligence in investigating its business operations and the Collateral for Hazardous Substances based upon Environmental Laws.

3.11    ACCURACY OF REPRESENTATIONS AND WARRANTIES. All representations and warranties by Borrower and Guarantor contained in this Agreement, the Note and the Loan Documents are true and correct. There is no material fact or circumstance that Borrower or Guarantor have knowledge of which has not been disclosed to Lender.

*ARTICLE IV*
COVENANTS OF BORROWER AND GUARANTOR

Until all the obligations under the Loan as evidenced by this Agreement, the Note and the Loan Documents have been performed and paid in full, Borrower and Guarantor covenant and agree as follows:

4.1    INSURANCE. Borrower and Guarantor shall maintain insurance in such amounts, in such types and against such hazards and liabilities as may be reasonably required by Lender. All such policies of insurance shall be in form and substance and with insurance companies satisfactory to Lender, and Borrower and Guarantor shall deliver evidence of same as Lender may request. Lender shall be designated as lender's loss payee, mortgagee, or such other designation as Lender may elect under any such policies, as its interests may appear.

4.2    MAINTENANCE AND EXISTENCE. For any Borrower or Guarantor which is an entity, they shall remain in good standing under the laws of the state(s) in which they were formed and conduct business. Further, Borrower and Guarantor shall comply with all valid and applicable statutes, ordinances, rules and regulations and shall keep in force and effect all licenses, permits, bonds and other agreements or approvals necessary to conduct business. Borrower and Guarantor shall not (i) engage in any business activities substantially different than those in which they are presently engaged; (ii) merge with, acquire, or consolidate with any other business entity; (iii) convert to a different kind of business entity; (iv) change their legal name; or (v) cease operations, liquidate or dissolve.

4.3    DIVIDENDS AND DISTRIBUTIONS. Borrower shall not declare or pay any dividends or make any distributions except from Borrower's current year net profits provided that (i) such dividend

or distribution does not violate any covenant, term or condition of this Agreement, the Note or the Loan Documents; and (ii) no Event of Default exists.

4.4     TAXES. Borrower and Guarantor shall pay promptly, when due, all taxes, assessments and governmental charges or levies imposed upon Borrower or Guarantor or upon the Collateral.

4.5     ADVERSE CHANGES, LITIGATION AND ADDITIONAL ASSURANCES. Borrower and Guarantor shall immediately inform Lender of (i) any material adverse change in its financial condition and (ii) any litigation or threatened litigation or of the occurrence of any other event or circumstance which might substantially affect the financial condition of Borrower or Guarantor. Further, Borrower shall make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loan and to perfect its liens on the Collateral.

4.6     MANAGEMENT AND OWNERSHIP. No change in the management, control or ownership of Borrower shall be made without the prior written consent of Lender.

4.7     OTHER DEBTS. Borrower shall not directly or indirectly incur, create, assume or permit to exist any obligation for payment of borrowed money, excepting only unsecured current liabilities incurred and taxes payable in the ordinary course of business, obligations contemplated by this Agreement and consumer debt incurred by an individual Borrower or Guarantor for personal, family, or household purposes, without the express written consent of Lender.

4.8     SALE OF COLLATERAL. Borrower and Guarantor shall not sell, lease, transfer or otherwise dispose of any of the Collateral (as defined below) as described in this Agreement other than in the ordinary course of business without the prior written consent of Lender. If Borrower or Guarantor should desire to sell any of the Collateral outside the course of ordinary business, Lender shall designate a release price or terms of a collateral substitution, along with any other terms and conditions determined in the sole and absolute discretion of Lender.

4.9     LIENS AND ENCUMBRANCES. Borrower and Guarantor shall neither incur nor permit any encumbrance, pledge or lien upon or against any of the Collateral (as defined below), except:
(a)     Liens or security interests required by this Agreement;
(b)     Liens or security interests which have approved in writing by Lender and expressly permitted within the Loan Documents;
(c)     Liens for taxes, assessments and other governmental charges not yet due and payable; and
(d)     Liens or security interests to secure obligations incurred by an individual borrower or guarantor for personal, family, or household purposes.

4.10     EXAMINATION OF RECORDS AND COLLATERAL. Upon three (3) days written notice, Borrower and Guarantor shall permit any representative of Lender to visit, examine, inspect, test and audit any or all of Borrower's books and records and the Collateral as Lender deems reasonably appropriate to ensure Borrower's and Guarantor's compliance with this Agreement, the Note and the Loan Documents, at Borrower's sole cost and expense. If Borrower now or hereafter maintain any records (including, without limitation, computer-generated records and computer software programs

for the generation of such records) in the possession of a third party, Borrower shall, at Lender's request, notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records Lender may request, at Borrower's sole cost and expense. Lender shall have unrestricted access to and the right to copy all records, accounting books, contracts, subcontracts, bills, statements and supporting documentation of Borrower and Guarantor relating in any way to the Loan and the Collateral.

4.11    ENVIRONMENTAL MATTERS. Borrower and Guarantor shall comply with all Environmental Laws and ensure that all Collateral securing the Loan is free of Hazardous Substances. As used in this Agreement, "Hazardous Substances" shall mean (i) any "Hazardous Waste," as defined by the Resource Conservation and Recovery Act of 1976, as amended; (ii) any "Hazardous Substance" as defined under applicable state law; (iii) any "Hazardous Substance" as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1989, as amended; (iv) any material or substance, the presence of which is prohibited by any federal, state or local law, statute, ordinance or regulation, or court administrative order or decree, or requires special handling in collection, storage, treatment or disposal; and (v) any materials that, because of their quantity, concentration, or physical, chemical, or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported, or otherwise handled. The term "Environmental Laws" shall mean (i) all federal, state, and local statutes, regulations, and ordinances relating to the protection of human health or the environment; (ii)   the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. Section 9601, et seq. (CERCLA), as amended; (iii) the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 (SARA), as amended; (iv) the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., as amended; (v) the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., as amended; and (vi) other applicable federal or state laws, rules, or regulations adopted pursuant thereto. Borrower and Guarantor will take and continue to take prompt action to remedy all environmental pollution and contamination, Hazardous Waste disposal and other environmental clean-up problems, if any, whether such issues have resulted from the order or request of a municipal, federal, state, administrative or judicial authority, or otherwise. Borrower and Guarantor will not violate any applicable municipal ordinance, federal or state statute, administrative rule or regulation, or order or judgment of any court with respect to environmental pollution or contamination, hazardous waste disposal or any other environmental matter. Borrower and Guarantor shall, at their sole cost and expense, conduct and complete all investigations, sampling, and testing required by Lender and all remedial, removal, and other actions necessary to clean up and remove all such Hazardous Substances on, under, about, or affecting any of the Collateral in accordance with all applicable Environmental Laws. Borrower and Guarantor shall give Lender prompt written and oral notice if Borrower or Guarantor receives any notice regarding Hazardous Substances on, under, about, or affecting any of the Collateral. Borrower and Guarantor will indemnify, defend and hold Lender, its officers, directors, employees, representatives, agents, and affiliates harmless against, and promptly pay on demand or reimburse each of them with respect to, all claims, demands, causes of action, loss, damage, liabilities, costs and expenses of every kind or nature whatsoever asserted against or incurred by any of them by reason of or arising out of or in any way related to the breach of any representation or warranty as set forth herein regarding Environmental Laws or the failure of Borrower to perform any obligation herein required to be performed pursuant to Environmental Laws. The provisions of this Section 4.11 shall survive the final payment of the Loan and the termination of this Agreement

and shall continue thereafter in full force and effect. Notwithstanding anything contained in this Agreement to the contrary, any covenants of Borrower concerning Hazardous Substances and Environmental Laws addressed herein shall not be applicable to any condition which is first created or introduced Loan during any time that Lender has ownership, possession or control of the Collateral. Medical service providers occupying the Collateral may use, store, and dispose of Hazardous Substances only if such use, storage, and disposal is (i) undertaken in the ordinary course of their respective medical practices, and (ii) performed in strict conformity with applicable Environmental Laws.

4.12  LOANS AND INVESTMENTS.  Borrower shall not (i) lend money, invest in, or advance money or assets to any other person, enterprise, or entity; (ii) purchase, create, or acquire any interest in any other enterprise or entity; (iii) incur any obligation as surety or guarantor other than in the ordinary course of business; or (iv) enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.  Further, Borrower and Guarantor agree and acknowledge that all loans to Borrower from any principal, member, shareholder or other affiliate of Borrower shall be expressly subordinate in all respects to this Loan.

4.13  LEASING.  Borrower and Guarantor shall not permit any lease or leasehold interest in the Collateral to have priority over the rights of Lender.  Prior to the closing of the Loan and at any time thereafter, Lender shall have the right to require Borrower to promptly delivery to Lender (i) tenant subordination agreements; (ii) subordination, non-disturbance, and attornment agreements; (iii) estoppel letters; and (iv) any other such document requested in the sole and absolute discretion of Lender in form and substance satisfactory to Lender.  Further, Borrower and Guarantor also acknowledge and agree that, during the term of the Loan, neither Borrower nor Guarantor will lease any space in any building purchased or renovated with Loan proceeds to any business engaged in any activity that is illegal under federal, state or local law (such as a marijuana dispensary), including businesses that make, sell, service or distribute products or services used in connection with illegal activity.

4.14  USA PATRIOT ACT.  Borrower and Guarantor certify that they are, and will remain, in compliance with the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the "USA PATRIOT ACT") and shall continue to provide evidence satisfactory to and sufficient for the Lender to verify the identity of Borrower, as required under the USA PATRIOT ACT.  Borrower shall notify Lender promptly of any change in such information.

4.15  STRICT COMPLIANCE.  Borrower and Guarantor shall (i) perform and comply, in a timely manner, with all terms, conditions, and provisions of this Agreement, the Note and the Loan Documents; and (ii) immediately notify Lender in writing of an Event of Default (as defined below) in connection with this Agreement, the Note and the Loan Documents.  Upon written request from Lender, Borrower and Guarantor shall deliver a compliance certificate to Lender which certifies that the representations and warranties set forth in this Agreement, the Note and the Loan Documents are true and correct and that no Event of Default exists thereunder.  Borrower and Guarantor, at their sole cost and expense, further agree to execute and delivery to Lender any documents, assignments, instruments, and other agreements as Lender may reasonably request to

evidence the Loan, secure and perfect the Collateral, or correct any deficiencies or errors in this Agreement, the Note and the Loan Documents.

4.16   COLLATERAL LOCATION DEVICES. Borrower consents and agrees to install, activate, maintain, and provide Lender access to such devices and systems as Lender may require from time to time, to aid Lender in determining the location of the Collateral, whether by Automatic Identification System (AIS), global maritime distress and safety system (GMDSS), global positioning system (GPS) or other technology. Borrower acknowledges that Lender is willing to make the Loan to Borrower only if Borrower agrees to the installation of such device in, on, or upon the Collateral. Once installed, such device may be removed only with the consent of Lender, in Lender's sole discretion. Borrower shall not disable, disconnect, alter, tamper with, remove, uninstall, reinstall, perform maintenance on, damage or destroy such device without Lender's written consent.

4.17.   RUN TIME. Borrower agrees not to operate the Collateral vessel more than Fifty (50) engine hours in any twelve-month period.

## ARTICLE V
## EVENTS OF DEFAULT

5.1   EVENT OF DEFAULT. An event of default (an "Event of Default") shall be deemed to have occurred hereunder upon any of the following:

(a)   Nonpayment, when due, of any principal, accrued interest, premium, fee or other charge due under the Note;

(b)   Any representation, warranty, or statement made or furnished to Lender by or on behalf of Borrower and Guarantor under this Agreement, the Note and the Loan Documents is false or misleading in any material respect, or becomes false or misleading in any material respect at any time thereafter;

(c)   The failure or violation of Borrower and Guarantor to keep, perform, observe, or comply with any covenant, agreement, term, or condition required under provisions of this Agreement, the Note or the Loan Documents;

(d)   The occurrence of any event or condition which constitutes a default under the terms of the Note or the Loan Documents;

(e)   If this Agreement, the Note or the Loan Documents cease to be in full force and effect, including, but not limited to, the failure of any lien instruments securing the Collateral to create a valid and perfected security interest in accordance with the terms of this Agreement, the Note and the Loan Documents;

(f)   Borrower suffers or permits any lien, encumbrance or security interest to attach to the Collateral, unless permitted by this Agreement or the Loan Documents or otherwise consented to in writing by Lender, or if any judgment is entered against Borrower and attaches to the Collateral;

(g)   If either Borrower or Guarantor revokes or disputes the validity or enforceability of their obligations under this Agreement, the Note or the Loan Documents;

(h)   If either Borrower or Guarantor (i) makes a general assignment for the benefit of its creditors; (ii) files a voluntary petition in bankruptcy; (iii) is adjudicated as bankrupt or insolvent; (iv) files any petition or answer seeking, consenting to, or acquiescing in, reorganization,

arrangement, composition, liquidation, dissolution or similar relief, under any present or future statute, law or regulation; (v) files an answer admitting or failing to deny the material allegations of the petition against it for any such relief; (vi) admits in writing its inability to pay its debts as they mature; (vii) discontinues business; or (viii) is generally unable to pay its debts as they become due.

(i) The commencement of foreclosure or forfeiture proceedings, whether voluntary, by judicial proceeding, repossession, or any other method, by any creditor or any governmental agency against any Collateral, or the garnishment of any account Borrower or Guarantor maintains with Lender;

(j) The actual or threatened (i) installation, storage, treatment, generation, manufacture, or use of Hazardous Substances on, under, or about any of the Collateral in violation of Environmental Laws or any other applicable law, regulation, or ordinance; or (ii) disposal, discharge, or release of Hazardous Substances on, under, about, or from any of the Collateral;

(k) If Borrower or Guarantor sells, leases, or otherwise transfers or conveys any of the Collateral, or any interest therein without Lender's prior written consent, unless otherwise as permitted by this Agreement and the Loan Documents.

(l) Any material uninsured damage to, or loss, theft, or destruction of, any of the Collateral occurs;

(m) The loss, suspension, revocation or failure to renew any license or permit now held or hereafter acquired by Borrower or Guarantor which loss, suspension, revocation or failure to renew might have a material adverse effect on the business profits, assets or financial condition of Borrower or Guarantor;

(n) Any change in ownership, management or control of Borrower without the express prior written consent of Lender;

(o) The death or legal incompetence of an individual Borrower or Guarantor and an adequate replacement satisfactory to Lender is not substituted in lieu thereof within ninety (90) days;

5.2     CROSS-DEFAULT. Borrower and Guarantor agree and acknowledge that (i) any Event of Default shall not only be an Event of Default under this Agreement, the Note and the Loan Documents, but shall also constitute a default under any and all other present and future loan(s) and other obligations of Borrower and/or Guarantor to Lender; and (ii) a default under any and all other present and future loan(s) and other obligations of Borrower and/or Guarantor to Lender shall constitute an Event of Default under this Agreement, the Note and the Loan Documents.

## *ARTICLE VI*
## REMEDIES ON EVENT OF DEFAULT

6.1     DECLARE NOTE DUE. Upon the occurrence of an Event of Default as defined in this Agreement, the Note or the Loan Documents, Lender may declare the entire unpaid balance of the Note and all other indebtedness of Borrower to Lender, including but not limited to accrued interest, fees and other costs to be immediately due and payable without presentment, protest or further demand or notice of any kind, all of which are hereby expressly waived.

6.2     ADDITIONAL REMEDIES. Upon the occurrence of an Event of Default as defined in this Agreement, the Note or the Loan Documents, Lender may, in addition to declaring the entire unpaid balance of the Note and all other indebtedness of Borrower to Lender immediately due and payable,

take all such other actions deemed necessary in the sole and absolute discretion of Lender, including, but not limited to the following: (i) foreclose upon Lender's security instruments upon the Collateral, in any manner and order available under law and as Lender may determine in its sole and absolute discretion; (ii) enter the premises occupied by Borrower or Guarantor and take possession of the Collateral: (iii) cease further disbursements of proceeds from the Loan; (iv) expend any such funds necessary to remedy the Event of Default, with such amounts expended by Lender being added to the indebtedness secured by the Note; (v) exercise each and every right and remedy granted to Lender under this Agreement, the Note, the Loan Documents and under any other applicable law or at equity; (vi) exercise all rights of setoff which Lender may have against any account, fund or property of any kind, tangible or intangible owned by Borrower or Guarantor; and (vii) assess a collateral monitoring fee of Twenty Thousand and No/100 Dollars ($20,000.00) per month while any Event of Default exists.

6.3     DISPOSITION OF COLLATERAL.  Lender shall have the right to sell, lease or otherwise dispose of the Collateral following an Event of Default, the proceeds of which will be applied against the amounts owed under this Agreement, the Note and the Loan Documents.  Lender, in its sole and absolute discretion, may (i) accept any form of consideration in exchange for the Collateral; (ii) purchase all or any part of the Collateral at public or, if permitted by law, private sale; and (iii) remove and store the Collateral at Borrower's sole cost and expense.  Prior to any sale of the Collateral, Lender will provide Borrower and Guarantor with at least five (5) business days' notice prior to such proposed action, which shall constitute fair and reasonable notice.  Proceeds from any disposition of the Collateral shall be applied in such order as Lender may determine against the following:

(a)     Towards the costs and expenses of taking, storing, preserving, transporting, insuring, repairing, holding and selling the Collateral, including any legal costs and attorney's fees;

(b)     Towards the expenses of satisfying any liens, security interests or encumbrances on or in the Collateral which may be prior to the lien or security interest of Lender; and

(c)     To unpaid interest, then to unpaid principal, due to Lender under the Note along with any other indebtedness due from Borrower to Lender.

6.4     RIGHT OF SETOFF.  Following an Event of Default, to the extent permitted by applicable law, Lender shall have a right of setoff, as well as a lien and security interest against all of Borrower's and Guarantor's accounts with Lender, including but not limited to any balance of any deposit, trust or agency account, or any other bank account with Lender.  Lender may administratively freeze all such accounts to protect its rights under this Agreement.

6.5     RELATIONSHIP TO STATE LAW.  Notwithstanding any other provision of this Agreement, the Note or the Loan Documents, if any provision of applicable law requires that Borrower be granted a longer notice period or a greater opportunity to cure, that provision of law shall control; provided, however, that the applicable notice period set forth in this Agreement, the Note or the Loan Documents shall run concurrently with the notice period required by law.

6.6     REMEDIES NOT EXCLUSIVE.  The rights, remedies, powers and privileges provided for in this Agreement shall not be deemed exclusive but shall be cumulative and shall be in addition to all other rights, remedies, powers and privileges in Lender's favor at law or in equity.

6.7    NO WAIVER.  Neither the failure nor delay on the part of Lender to exercise any right, remedy, power or privilege under this Agreement, the Note or the Loan Documents upon the occurrence of any Event of Default or otherwise shall operate as a waiver thereof or impair any such right, remedy, power or privilege of Lender.  No waiver of any Event of Default shall affect any later Event of Default or otherwise impair any rights of Lender. No single, partial or full exercise of any rights, remedies, powers and privileges by Lender shall preclude further or other exercise thereof. No course of dealing between Lender and Borrower or Guarantor shall operate as or be deemed to constitute a waiver of Lender's rights under this Agreement, the Note or the Loan Documents or affect the duties or obligations of Borrower or Guarantor thereunder.

*ARTICLE VII*
COLLATERAL

7.1    COLLATERAL.  As security for the full and timely payment and performance under this Agreement, the Note and the Loan Documents, Borrower and Guarantor have granted Lender a security interest in the following (the "Collateral"):

(a)    A security interest in favor of Lender as it relates to the following titled vessel:  2023 Tecnomar for Lamborghini 63, Hull #TSGLY11DA223.

The above-defined Collateral shall include all property used to secure the Loan, whether now owned or hereafter acquired, and shall continue in full force and effect until the Loan has been repaid in full.

7.2    CROSS-COLLATERALIZATION. Borrower and Guarantor agree and acknowledge that (i) all of the above-defined Collateral shall not only secure the obligations of Borrower and Guarantor under this Agreement, the Note and the Loan Documents, but shall also secure all other present and future loan(s) and other obligations of Borrower and/or Guarantor to Lender; and (ii) the Loan shall also be secured by any and all other collateral which secures present and future loan(s) and other obligations of Borrower and/or Guarantor to Lender.

7.3    INTENTIONALLY OMITTED.

*ARTICLE VIII*
MISCELLANEOUS

8.1    INTEGRATED AGREEMENT.  This Agreement, together with the Note and Loan Documents, constitute the entire understanding and agreement of the parties as to the matters set forth herein.  The Loan Documents shall be construed as integrated and complementary of each other, and as augmenting and not restricting Lender's rights, powers, remedies and security.  The Loan Documents supersede all prior statements, agreements and understandings between the parties with respect to the Loan.

8.2    AMENDMENTS AND APPROVALS.  No amendment of any provision of this Agreement, the Note, or any of the Loan Documents, nor consent by Lender to Borrower for any departure thereof, shall be effective unless the same shall be in writing and signed by Lender and Borrower, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.  Further, notwithstanding anything to the contrary in this Agreement, the Note or the

Loan Documents, any right Lender has under this Agreement, the Note or the Loan Documents to request, approve, accept, determine, decide, reserve rights, or make any judgment on any matter or issue shall be in Lender's sole and absolute discretion.

8.3     NOTICES. All notices, elections or demands permitted or required to be given under this Agreement, the Note and the Loan Documents shall be in writing, signed by or on behalf of the party giving such notice, election or demand, and deemed to have been properly given and shall be effective upon being personally delivered, or upon being deposited in the United States mail, postage prepaid, certified with return receipt required, and deemed to have been received on the earlier of the date shown on the receipt or three (3) business days after the postmarked date thereof, to the other party at the address of such other party set forth below or such other address within the continental United States as such other party may designate by specifically designating as a notice of change of address and given in accordance herewith. No notice of change of address shall be effective until the date of receipt thereof. Personal delivery to a partner or any officer, partnership, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been given shall also constitute receipt. Any such notice, election, demand, request or response shall be addressed as follows:

| | |
|---|---|
| If given to Lender: | Bridgecap Equities LLC<br>1706 Ave. M<br>Brooklyn, New York 11230<br>Attn: Nissim Ohayon, Principal |
| Copy *(does not constitute notice)* to: | Robinson Franzman, LLP<br>191 Peachtree St NE, Suite 2600<br>Atlanta, Georgia 30303<br>Attn:  Todd N. Robinson |
| If given to Borrower: | Commercial Fitness Concepts LLC<br>5510 S 129TH E AVE<br>Tulsa, Oklahoma 74134<br>Attn: Brandon Outlaw, Manager |
| If given to Guarantor: | Brandon Outlaw<br>5510 S 129TH E AVE<br>Tulsa, Oklahoma 74134 |

8.4     GOVERNING LAW AND PARTIES BOUND. This Agreement, the Note and the Loan Documents shall be governed by and construed in accordance with the laws of the State of Delaware, except and only to the extent of procedural matters related to the perfection and enforcement of Lender's rights and remedies against the Collateral, which matters shall be governed by the laws of the jurisdiction in which such Collateral is located. However, if the enforceability or validity of any provision of this Agreement, the Note or the Loan Documents is challenged or questioned, such provision shall be governed by whichever applicable state or

federal law would uphold or enforce such challenged or questioned provision. Borrower and each Guarantor waive any objection which they may have based on lack of personal jurisdiction, improper venue or forum non conveniens for any dispute.

8.5     NO ASSIGNMENT BY BORROWER.  No commitment or other agreement issued by Lender to Borrower or Guarantor relating to the Loan nor any of Borrower's or Guarantor's rights under this Agreement, the Note or the Loan Documents shall be assignable by Borrower or Guarantor without the express prior written consent of Lender in its sole and absolute discretion.

8.6     SEVERABILITY.  If any clause or provisions of this Agreement, the Note or the Loan Documents is held to be invalid, illegal or unenforceable by any court of competent jurisdiction, the invalidity of such clause or provision shall not affect the validity, legality or enforceability any of the remaining portions or provisions of this Agreement, the Note or the Loan Documents. If feasible, the offending provision shall be considered modified so that it becomes legal, valid, and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement, the Note or the Loan Documents, as the case may be.

8.7     TIME.  Time is of the essence of this Agreement, the Note and the Loan Documents.

8.8     INCONSISTENCY WITH OTHER LOAN DOCUMENTS.  If there exists inconsistency between provisions contained within this Agreement, the Note and the Loan Documents, it is intended that the provisions of this Agreement shall be controlling.

8.9     FORCE MAJEURE.  If Lender is delayed, hindered, or prevented from performing any act required under this Agreement by reason of war, governmental restrictions, civil commotion, shortage of labor or materials, strikes, fire, or any other reason beyond the control of Lender, the performance of such act shall be excused for the period of delay.

8.10     COUNTERPARTS.  This Agreement, the Note, and the Loan Documents may be executed in any number of counterparts, each of which shall be deemed to be an original, but all such separate counterparts shall together constitute but one and the same instrument.

8.11     JOINT AND SEVERAL LIABILITY.  If there is more than one borrower or guarantor, the liability of each borrower and guarantor under this Agreement shall be joint and several.

8.12     WAIVER OF RIGHT TO JURY TRIAL.  TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, BORROWER AND GUARANTOR WAIVE ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (a) ARISING UNDER THIS AGREEMENT, THE NOTE AND LOAN DOCUMENTS OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF BORROWER, GUARANTOR AND LENDER CONTEMPLATED IN THIS AGREEMENT, IN CONTRACT, TORT OR OTHERWISE. BORROWER AND GUARANTOR ACKNOWLEDGE THAT THEY HAVE HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL REGARDING THIS SECTION, THAT THEY FULLY UNDERSTAND ITS TERMS, CONTENT AND EFFECT, AND THAT THEY VOLUNTARILY AND KNOWINGLY AGREE TO THE TERMS OF THIS SECTION.

8.13   NO FIDUCIARY RELATIONSHIP. Lender has no fiduciary or other special relationship with or duty to Borrower, and none is created by this Agreement, the Note or the Loan Documents. Lender has no right to control the business, property, management, or operations of Borrower or Guarantor except as expressly provided in this Agreement, the Note and the Loan Documents.

8.14   INTERPRETATION. This Agreement is the result of negotiations between Borrower, Guarantor, Lender, and their respective counsel. This Agreement shall not be applied, interpreted, or construed more strictly against a party because that party or their counsel drafted this Agreement.

8.15   LIMITATION OF LENDER'S RESPONSIBILITY. Each survey, inspection, appraisal or other report requested or required by Lender under this Agreement, the Note or in connection with the Loan shall be solely for Lender's own use and protection and not for the benefit or the protection of Borrower, Guarantor or any other person or entity. Borrower and Guarantor acknowledge and agree that Lender makes no warranty or representation as to the accuracy, completeness, or sufficiency of any such survey, inspection, appraisal or other report and neither Borrower, Guarantor nor any other person or entity may rely upon any such survey, inspection, appraisal or other report.

8.16   DEFINED TERMS. Capitalized words and terms have the meanings given to them in this Agreement, the Note and the Loan Documents. Accounting words and terms not otherwise defined in this Agreement, the Note and the Loan Documents shall have the meanings given to them in accordance with GAAP or an OCBOA. All references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and words and terms used in the plural shall include the singular, as the context may require.

8.17   SURVIVAL. All covenants, agreements, representations and warranties made by Borrower and Guarantor in connection with the Loan shall survive the execution and delivery of this Agreement, the Note and the Loan Documents.

8.18   INTENTIONALLY OMITTED.

8.19   SUCCESSORS AND ASSIGNS. All representations, warranties, covenants, and agreements by or on behalf of Borrower and Guarantor contained in this Agreement, the Note and the Loan Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns.

8.20   WAIVER BY BORROWER. In connection with any proceeding under this Agreement, the Note and Loan Documents, including, without limitation, any action by Lender in foreclosure, repossession or other court process or in connection with any other action related to the Loan, Borrower waives (i) all benefits under any present or future laws exempting any property, real or personal, or any part of any proceeds thereof from attachment, levy or sale under execution; (ii) presentment for payment, demand, notice of demand, notice of non-payment, protest and notice of protest of the Note; (iii) any demand for possession of Collateral prior to commencement of any suit; and (iv) all rights to claim or recover attorney's fees and costs if Borrower is successful in any action to remove, suspend or prevent the enforcement of a judgment entered by confession.

8.21   INDEMNIFICATION OF LENDER.  Borrower and Guarantor agree to indemnify, defend, and hold Lender and its officers, directors, employees, and agents harmless from and against all claims, suits, obligations, damages, losses, costs, expenses (including, without limitation, reasonable attorneys', architect's, and engineering fees), demands, liabilities, penalties, fines, and forfeitures of any nature whatsoever and whenever made that may be asserted against or incurred by Lender or its officers, directors, employees, and agents arising out of, relating to, or in any manner occasioned by, (i) this Agreement, the Note and the Loan Documents; (ii) a breach by Borrower or Guarantor of this Agreement, the Note or the Loan Documents; (iii) the exercise of the rights and remedies granted to Lender under this Agreement, the Note or the Loan Documents; or (iv) the use, generation, manufacture, storage, disposal, release, or threatened release of a Hazardous Substance on, under, about, or from the Collateral.  Borrower releases and waives any future claims against Lender and its officers, directors, employees, and agents for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any Environmental Law for the use, generation, manufacture, storage, disposal, release, or threatened release of a Hazardous Substance on, under, about, or from the Collateral.  The provisions of this Section 8.21 (i) shall survive the payment of the Note and the expiration, cancellation, or termination of this Agreement, and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise; and (ii) shall not apply against Lender's own gross negligence or willful misconduct, in which case Lender's liability shall be limited to only direct damages suffered and shall not extend to consequential or incidental damages.

8.22   LENDER EXPENSES.  Borrower agrees to pay upon demand all of Lender's reasonable costs and expenses, actually incurred, in connection with the closing of the Loan or with the enforcement of this Agreement, the Note and the Loan Documents, whether or not an action or claim is filed.  Such Lender costs and expenses include, but are not limited to, Lender's reasonable attorneys' fees and legal expenses incurred in connection with litigation, alternative dispute resolution proceedings, bankruptcy proceedings, appeals, anticipated post-judgment collection services, any fees or costs as may be directed by a court of competent jurisdiction, discharging or paying all taxes, liens, claims of lien, security interests, encumbrances, and other claims at any time levied or placed on the Collateral and paying all costs for insuring, maintaining, and preserving the Collateral.  All such reasonable expenses actually incurred or paid by Lender as set forth herein will become part of the indebtedness secured by the Note and are payable on demand.

8.23   CAPTION HEADINGS.  Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

8.24   CONSENT TO LOAN PARTICIPATION.  Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender.  Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters.  Borrower additionally waives any and all notices of sale of participation interest, as well as all notices of any repurchase of such participation interests.  Borrower also agrees that the purchasers of any such participation interest will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation

interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interest may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

8.25   INTENTIONALLY OMITTED.

*[Signatures commence on following page]*

Docusign Envelope ID: 8458F45A-9458-4345-A3C8-0A0F7874DD86

This Agreement is executed and entered into as of November 26, 2024.

**LENDER:**

**BRIDGECAP EQUITIES LLC**

BY: _____
          Nissim Ohayon, Principal

**BORROWER:**

Affirmed 11/26/24

Commercial Fitness Concepts LLC,
an Oklahoma limited liability company

By: _____ (L.S.)
          Brandon Outlaw, Manager

Witness _____

Agreed and consented to as of 11/26/2024.

Witness _____

**GUARANTOR:**

_____ (SEAL)
Brandon Outlaw, an individual

Affirmed 11/26/24

*LOAN AGREEMENT*                                                            17

This Agreement is executed and entered into on ~~July~~ Nov 26, 2024.

LENDER:

BRIDGECAP EQUITIES LLC

BY: _____
Niasim Ohayon, Principal

BORROWER:

Commercial Fitness Concepts LLC,
an Oklahoma limited liability company

_____
Witness

By: _____ (L.S.)
Brandon Outlaw, Manager

Agreed and consented to on July 10, 2024.

GUARANTOR:

_____
Witness

_____ (SEAL)
Brandon Outlaw, an individual

LOAN AGREEMENT