

EXHIBIT

D

PENGAD 800-631-6389

**DEED OF COVENANTS**
Dated as of November 26, 2024

between

**COMMERCIAL FITNESS CONCEPTS LLC**
as Owner

and

**BRIDGECAP EQUITIES LLC**
as Mortgagee

in respect of
a $2,000,000.00 Loan Agreement


M.y. TNT

#206960v1

THIS DEED OF COVENANTS IS MADE AS OF THE 26th DAY OF NOVEMBER 2024

BETWEEN

1.     COMMERCIAL FITNESS CONCEPTS LLC, a limited liability company incorporated under the laws of the Oklahoma and having its Registered Office at 5510 South 129th East Avenue, Tulsa, Oklahoma, 74134, USA (hereinafter called the "Owner"); and

2.     BRIDGECAP EQUITIES LLC, a limited liability company organised under the laws of the State of Delaware, acting through its offices at 1706 Ave. M, Brooklyn New York 11230, USA as Lender (hereinafter called the "Mortgagee").

WHEREAS:

The Owner is the sole, absolute, legal and beneficial owner of sixty-four sixty-fourth shares of and in the Bahamian flagged yacht "TNT" registered at the port of Nassau, The Bahamas, with Official Number Y0208.

A Promissory Note dated November 26, 2024 made between the Mortgagor as borrower and the Mortgagee as lender (as the same may from time to time be amended, supplemented, novated or replaced, the "Promissory Note").

A loan agreement dated November 26, 2024 made between the Mortgagor as borrower, BRANDON OUTLAW as guarantor and the Mortgagee as lender (hereinafter as the same may from time to time be amended, restated, varied, novated, replaced, increased in amount or supplemented called the "Loan Agreement").

In order to secure payment of any and all sums and in order to secure performance of any and all obligations that are due or may become due to the Mortgagee from the Owner under or pursuant to the Loan Agreement, the Owner has executed in favour of the Mortgagee a first priority Bahamian statutory ship mortgage in account current form of even date herewith constituting a first priority mortgage (hereinafter called the "Mortgage") over sixty-four sixty-fourth shares in the Vessel.

This Deed is supplemental to the Loan Agreement and to the Mortgage and to the security thereby created.

NOW THIS DEED WITNESSETH AND IT IS HEREBY AGREED AS FOLLOWS:

1.     DEFINITIONS AND INTERPRETATION

1.01   In this Deed words and expressions defined in the Loan Agreement shall, unless herein otherwise defined or unless the context otherwise requires, have the same meaning as in the Loan Agreement when used herein.

1.02   In this Deed the following words and expressions shall bear the following meaning:

       "Event of Default" means any of those events specified in Article V of the Loan Agreement;

       "Insurances" means all policies and contracts of insurance, including without limitation all entries of the Vessel in a protection and indemnity or war risks association, which are from

time to time in place, taken out or entered into by or for the benefit of the Owner or, where applicable, a charterer, in respect of, or otherwise in connection with, the Vessel and all the benefits thereof, including without limitation all claims of whatsoever nature and all return of premiums;

"Loan" means the loan made or to be made under the Loan Agreement or the principal amount outstanding for the time being of that loan;

"Loan Agreement" means the Loan Agreement mentioned in Recital C and as the same may from time to time be amended, varied, supplemented, novated, extended or replaced;

"Mortgage" means the statutory mortgage mentioned in Recital D;

"Mortgaged Premises" means (a) the Vessel; (b) the Insurances and all benefits thereof; and (c) any Requisition Compensation, and references to the "Mortgaged Premises" shall mean all or any of the constituent parts thereof, as the context requires;

"Indebtedness" means any sum or sums payable by the Owner to the Mortgagee, all interest accrued and accruing thereon and all other moneys for the time being owed to the Mortgagee under or pursuant to this Deed and/or the Loan Agreement or either of them whether actually or contingently, presently or in the future;

"Requisition Compensation" means all amounts payable to the Owner as a result of the requisition for title or other compulsorily acquisition of the Vessel but does not include requisition for hire payments;

"Secured Obligations" means any and all obligations that the Owner has towards the Mortgagee pursuant to or in relation with this Deed and/or the Loan Agreement;

"Security Period" means the period terminating upon the payment of all moneys payable under this Deed and/or the Loan Agreement and the proper discharge of all other obligations towards the Mortgagee including the Secured Obligations; and

"Vessel" means the motor yacht named "TNT" registered at the Port of Nassau, The Bahamas under Official Number Y0208 and includes any shares or interest therein and its engines, machinery, boats, tackle, outfit, equipment, spare gear, fuel, consumable or other stores, belongings and appurtenances whether on board or ashore and whether now owned or hereafter acquired.

1.03    In the Mortgage:

      (a)    references to "Interest" shall be construed as references to interest covenanted to be paid in accordance with Clause 3.01 herein;

      (b)    references to "principal" mean all other sums of money from time to time being comprised in the Indebtedness and any of the Secured Obligations; and

      (c)    references to "the sums for the time being owing to the Mortgagee" and "sums for the time being due on this security" means the whole of the Indebtedness and any of the Secured Obligations.

1.04    Clause headings and the table of contents are inserted for convenience of reference only and shall be ignored in the interpretation of this Deed.

1.05    In this Deed, unless the context otherwise requires:

   (a)    references to any document or part thereof are to be construed as references to such document or part thereof as lawfully and properly amended, supplemented, extended or replaced from time to time;

   (b)    words importing the plural shall include the singular and vice versa.

1.06    This Deed shall be read together with the Loan Agreement but in case of any conflict between the said Loan Agreement and this Deed, the provisions of the Loan Agreement shall prevail.


## 2.    REPRESENTATIONS AND WARRANTIES

2.01    The Owner hereby represents and warrants to the Mortgagee that:

   (a)    It is the sole, absolute, legal and beneficial owner of the whole of the Vessel;

   (b)    The Owner has not sold or transferred, or agreed to sell or transfer the Vessel or any share therein;

   (c)    Neither the Vessel nor any part thereof is subject to any security interest, save as constituted by the Mortgage and this Deed, or otherwise permitted by the terms of this Deed;

   (d)    It has taken all necessary corporate action to authorise, approve, agree execute, deliver, register and perform its obligations under or pursuant to the Loan Agreement.

2.02    The Owner further represents and warrants to the Mortgagee that nothing herein contained is contrary to any law, regulation or agreement to which the Owner is a party, or is otherwise subject.


## 3.    COVENANTS TO PAY PRINCIPAL AND INTEREST

3.01    The Owner in consideration of the premises and pursuant to the terms of the Loan Agreement hereby covenants with the Mortgagee to pay to the Mortgagee:

   (a)    any sum or sums owing to the Mortgagee in the manner and upon the terms set out in the Loan Agreement;

   (b)    interest on any due sum or sums or default interest on any overdue sum or sums to the Mortgagee under the Loan Agreement at the rate or rates from time to time applicable thereto in the manner and upon the terms set out in the Loan Agreement; and

   (c)    all other moneys payable by the Owner to the Mortgagee under the Loan Agreement or any of them at the times and in the manner therein specified.

**4.     MORTGAGE**

4.01     As security for payment of the Indebtedness and as security for performance of the Secured Obligations the Owner as beneficial owner hereby mortgages and charges to and in favour of the Mortgagee all its interest present and future in the Mortgaged Premises and without prejudice to the generality of the foregoing, the Owner hereby assigns and agrees to assign to the Mortgagee the Insurances, and any Owner's Requisition Compensation as hereinbefore defined.

**5.     COVENANTS**

5.01     The Owner hereby covenants to insure and keep the Vessel insured or cause or procure the Vessel to be insured and to be kept insured at no expense to the Mortgagee in regard to:

    (i)     all risks hull and machinery war risks that should be known to the Owner and reasonably approved by the Mortgagee such approval not to be unreasonably withheld or delayed; and

    (ii)     protection and indemnity insurance by a protection and indemnity association or club in both protection and indemnity risks and liabilities;

and such other insurances.

5.02     The Owner undertakes duly and punctually to pay all premiums, calls and contributions, and, at its own expense, to arrange and provide any guarantees from time to time required by any protection and indemnity or war risks association.

5.03     The Owner hereby covenants with the Mortgagee throughout the Security Period:

    (i)     to keep the Vessel seaworthy and in a state of good repair and in compliance with the requirements from time to time of all applicable laws, conventions and regulations and of her insurers;

    (ii)     to maintain the registration of the Vessel under its current flag or another pre-approved Flag; to effect and maintain registration of the Mortgage at the Vessel's Ship Registry; and not cause nor permit to be done any act or omission as a result of which either of those registrations might be defeated or imperilled;

    (iii)     to maintain the Vessel in a condition entitling the Vessel to the highest class applicable to vessels of her type of a classification society approved by the Mortgagee free of material overdue recommendations and adverse qualifications;

    (iv)     to comply with all laws, conventions and regulations applicable to the Owner or to the Vessel and to carry on board the Vessel all certificates and other documents which may from time to time be required to evidence such compliance;

    (v)     not without the prior written consent of the Mortgagee to make, nor permit nor cause to be made, any material change in the structure, type or speed of the Vessel;

(vi)    not to sell, agree to sell, or otherwise dispose of, or agree to dispose of, any shares in the Vessel and not to sell, transfer or dispose of the Vessel without the Mortgagee's written consent;

(vii)   to procure that all repairs to the Vessel or replacements of parts or equipment of the Vessel are effected in such a way as not to diminish the value of the Vessel and with replacement parts or equipment the property of the Owner and free of all encumbrances (other than the Mortgage and this Deed);

(viii)  to permit the Mortgagee and all persons appointed by the Mortgagee, upon reasonable notice and at reasonable times, to board the Vessel from time to time during the Security Period to inspect the Vessel's state and condition and, if the Vessel shall not be in a state and condition which complies with the requirements of this Deed, to effect such repairs as shall in the reasonable opinion of the Mortgagee be desirable to ensure such compliance, without prejudice to the Mortgagee's other rights under or pursuant to the Mortgage or this Deed. The costs incurred in connection with any such inspections shall be for the account of the Mortgagee unless the inspection reveals that the Vessel is not in a state and condition which complies with the requirements of this Deed;

(ix)    to immediately notify the Mortgagee of any capture, seizure, arrest, confiscation or detention of the Vessel, and to cause the Vessel to be released from any capture, seizure, arrest, confiscation or detention as quickly as possible, and promptly to notify the Mortgagee in the same manner of the release of the Vessel;

(x)     that it will promptly notify the Mortgagee in writing of any change of the name of the Vessel during the Security Period;

(xi)    in the event of any capture, seizure, arrest, confiscation or detention of the Vessel, to take all reasonable and lawful steps to recover possession of the Vessel as soon as it is entitled to do so;

(xii)   to give to the Mortgagee from time to time during the Security Period on reasonable request such information as the Mortgagee may require with regard to the Vessel's employment, position and state of repair and, on the Mortgagee's reasonable request, to supply the Mortgagee with copies of all charterparties and other contracts of employment relating to the Vessel;

(xiii)  to comply with all requirements from time to time of the Vessel's classification society and to give to the Mortgagee from time to time during the Security Period on request copies of all classification certificates of the Vessel and reports of surveys required by the Vessel's classification society and to notify the Mortgagee promptly of any requirement or recommendation imposed by the Vessel's classification society which is not complied with within any relevant time limit;

(xiv)   not to employ the Vessel in any way which might impair the security created by the Mortgage and this Deed;

(xv)    not during hostilities (whether or not a state of war shall formally have been declared and including, without limitation, any civil war) to permit the Vessel to be employed in carrying any goods which may be declared to be contraband of war or which may render the Vessel liable to capture, confiscation, seizure, detention or destruction, nor to permit the Vessel to enter any area which is declared a war zone by any governmental authority or by the

Vessel's insurers unless the Owner has effected at its own expense such additional insurances as shall be necessary or customary for first class shipowners. The Owner shall promptly notify the Mortgagee thereof and, if required by the Mortgagee, specifically assign those insurances to the Mortgagee by such documents as the Mortgagee may require;

(xvi)   to comply, or procure compliance with, in all material respects all environmental laws and environmental approvals relating to the Vessel, its operation or management and the business of the Owner from time to time; and

(xvii)  not to operate the Vessel more than Fifty (50) engine hours in any twelve-month period.

## 6.   POWERS OF MORTGAGEE TO PROTECT SECURITY AND REMEDY DEFAULTS

6.01   Save as otherwise provided herein, the Mortgagee shall, without prejudice to its other rights, powers and remedies under the Mortgage and this Deed, be entitled (but not bound) at any time, and as often as may be necessary, to take any such action as it in its discretion thinks fits for the purpose of protecting or maintaining the security created by the Loan Agreement and this Deed and all expenses attributable thereto shall be payable by the Owner on demand.

## 7.   POWERS OF MORTGAGEE TO ENFORCE SECURITY

7.01   Upon the occurrence of any Event of Default but without the necessity for any court order or declaration in any jurisdiction to the effect that an Event of Default has occurred, the security constituted by the Mortgage and this Deed shall immediately become enforceable and the Mortgagee shall become forthwith entitled as and when it may see fit to exercise in relation to the Mortgaged Premises all or any of the rights, powers and remedies conferred upon a mortgagee, chargee or assignee or otherwise by law, in equity or in admiralty, whether of the Bahamas or of any other jurisdiction where the Vessel may be found and/or by virtue of the Mortgage and this Deed and in particular (without limiting the generality of the foregoing)

(a)   to take and enter into possession of the Vessel;

(b)   to require that all policies, contracts, certificates of entry and other records relating to the Insurances (including details of and correspondence concerning outstanding claims) be forthwith delivered to or to the order of the Mortgagee;

(c)   to collect, recover, compromise and give a good discharge for any and all moneys or claims for moneys then outstanding or thereafter arising under the Insurances or any of them and to permit any brokers through whom collection or recovery is effected to charge the usual brokerage therefor;

(d)   to discharge, compound, release or compromise claims in respect of the Vessel which have given or may give rise to any charge or lien on the Vessel or which are or may be enforceable by proceedings against the Vessel;

(e)   to sell the Vessel without being responsible for loss or damage, upon such terms and conditions as the Mortgagee shall deem best, free from any claim of or by the Owner, at public auction or private sale at home or abroad and upon such terms as the Mortgagee in its absolute discretion may determine;

(f) to manage the Vessel and, pending sale of the Vessel, to insure, maintain and repair the Vessel, and to employ, sail or lay up the Vessel in such manner and for such - period as the Mortgagee, in its absolute discretion shall deem expedient and for all the purposes aforesaid the Mortgagee shall be entitled to do all acts and things incidental or conducive thereto and in particular (but without prejudice to the generality of the foregoing) to enter into such arrangements respecting the Vessel, her management, insurance, maintenance, repair, classification and employment in all respects as if the Mortgagee were the owner of the Vessel, but without being responsible for any loss incurred as a result of the Mortgagee doing or omitting to do any such acts or things as aforesaid; and

(g) to recover from the Owner on demand all expenses incurred or paid by the Mortgagee in connection with the exercise of the powers referred to in this Clause 7.01.

## 8.    RECEIVER

8.01    **Right to appoint Receiver.** On the occurrence of an Event of Default which is continuing and after the giving of notice to that effect in accordance with the Loan Agreement, the Mortgagee may appoint a receiver and/or manager (or joint receivers and/or managers) of the Mortgaged Premises, and the following shall apply:

(a) the Mortgagee may exercise any of the powers conferred by the Mortgage or this Deed while a Receiver is in office and is acting;

(b) an appointment of a Receiver shall be by deed or, at the Mortgagee's option, by a document signed by any of its officers;

(c) the remuneration of a Receiver shall be fixed by the Mortgagee and shall be at the cost and expense of the Owner;

(d) to the fullest extent permitted by law, a Receiver shall be the Owner's agent, and the Owner shall be responsible for his remuneration and for his contracts, acts and defaults;

(e) a Receiver shall have all the powers conferred on the Mortgagee by the Mortgage and this Deed and without limiting the generality of the foregoing, by Clause 8.01 as if the reference to the Mortgagee in Clause 8.01 were a reference to the Receiver, and all the powers conferred on a Receiver by the Conveyancing and Law of Property Act (Chapter 138 of the Statute Laws of the Commonwealth of The Bahamas, 2000 Edition);

(f) a Receiver may delegate to any person or persons of any of the powers (including the discretions) conferred on him by, or pursuant to, this Deed and may do so on terms authorising successive sub-delegations;

(g) in the case of joint Receivers any of the powers (including the discretions) conferred by this Deed or by the general law may be exercised by any one or more of them, unless their appointment specifically states the contrary;

(h)   the Mortgagee may remove a Receiver, with or without appointing another Receiver; such a removal may be effected by a document signed by any of the Mortgagee 's officers;

(i)   the Mortgagee may appoint a Receiver to replace a Receiver who has resigned or for any other reason ceased to hold office; and

(j)   a Receiver shall be entitled to retain out of any money received by him such amounts in respect of his remuneration and expenses (or to cover estimated future expenses) as he may from time to time agree with the Mortgagee.

8.02   **Conveyancing and Law of Property Act (Chapter 138) not applicable.**

(a)   Section 19 of the Conveyancing and Law of Property Act (Chapter 138) or the equivalent provisions of any subsequent amending or consolidating act shall not apply to the Mortgage and this Deed.

(b)   The statutory power of sale shall be exercisable at any time after the money owing on the security of the Mortgage and this security shall have become payable without regard to Section 22 of the Conveyancing and Law of Property Act (Chapter 138) which section shall not apply to this security or any sale made by virtue thereof.


9.   **APPLICATION OF MONEYS**

9.01   All monies received or realised by the Mortgagee in connection with the enforcement of any Mortgage shall be applied by the Mortgagee in accordance with the relevant provisions of the Loan Agreement.


10.   **CONTINUING SECURITY AND OTHER PROVISIONS**

10.01   It is declared and agreed that:

(a)   the security created by the Mortgage and this Deed shall be a continuing security for the payment of the Indebtedness and accordingly the security so created shall not be satisfied by any intermediate payment or satisfaction of any part of the Indebtedness;

(b)   the security so created shall be in addition to, and shall not in any way prejudice or affect the security created by, any deposit of documents, or any guarantee, lien, bill, note, mortgage or other security now or hereafter held by the Mortgagee, or any right or remedy of the Mortgagee thereunder, and shall not in any way be prejudiced or affected thereby or by the invalidity of unenforceability thereof, or by the Mortgagee releasing, modifying or refraining from perfecting or enforcing any of the same, granting time or indulgence or compounding with any person liable;

(c)   all the rights, remedies and powers vested in the Mortgagee by the Mortgage and this Deed may be exercised from time to time and as often as the Mortgagee may deem expedient; and

(d)    notwithstanding that this Deed is expressed to be supplemental to the Mortgage, the obligations of the Owner hereunder shall continue in full force and effect after any discharge of the Mortgage (unless same has been substituted by other adequate security) until the Indebtedness has been fully paid.

10.02   No delay or omission of the Mortgagee to exercise any right, power or remedy under the Loan Agreement or any of them shall operate as a waiver thereof, nor shall any single or partial exercise by the Mortgagee of any right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy, nor shall the giving by the Mortgagee of any consent to any act which by the terms of this Deed requires such consent prejudice the right of the Mortgagee to withhold or give consent to the doing of any other similar act. The remedies provided in the Loan Agreement are cumulative and are not exclusive of any remedies provided by law.

10.03   The Mortgagee shall be entitled, at any time and as often as may be expedient, to delegate all or any of the powers and discretions vested in them by the Loan Agreement the Mortgage and this Deed in such manner, upon such terms, and to such persons as the Mortgagee in their absolute discretion may think fit.

10.04   The Owner consents and agrees to install, activate, maintain, and provide the Mortgagee access to such devices and systems as Mortgagee may require from time to time, to aid the Mortgagee in determining the location of the Vessel, whether by Automatic Identification System (AIS), global maritime distress and safety system (GMDSS), global positioning system (GPS) or other technology. The Owner acknowledges that the Mortgagee is willing to make the Loan to the Owner only if the Owner agrees to the installation of such device in, on, or upon the Vessel. Once installed, such device may be removed only with the consent of the Mortgagee, in the Mortgagee's sole discretion. The Owner shall not disable, disconnect, alter, tamper with, remove, uninstall, reinstall, perform maintenance on, damage or destroy such device without Mortgagee's written consent.

## 11.    COSTS AND INDEMNITY

11.01  The Owner shall pay or procure the payment of:

(a)    to the Mortgagee on demand: all expenses (including legal fees, out-of-pocket and travel expenses, translations and costs to external advisers and experts) incurred by the Mortgagee in connection with the preparation and completion of the Loan Agreement, this Deed and the Mortgage;

(b)    upon any Event of Default any and all costs and expenses (including legal fees) which the Mortgagee may suffer in connection therewith or as a result thereof.

11.02  The Owner undertakes to indemnify the Mortgagee against all losses, actions, claims, expenses, demands, obligations and liabilities whatsoever and whenever arising which may now or hereafter be incurred by it or by any manager, Mortgagee, officer or employee for whose liability, act or omission it may be answerable, or for anything done or omitted in the exercise or purported exercise of the powers contained in the Mortgage and this Deed, or otherwise in connection therewith and herewith.

11.03  Any amount due from the Owner to the Mortgagee hereunder or pursuant to the Loan Agreement shall be secured under the Mortgage.

#206980v1

**12.   POWER OF ATTORNEY**

12.01   The Owner, by way of security and in order more fully to secure the performance of the Owner's obligations under the Mortgage and this Deed, hereby irrevocably appoints the Mortgagee and any receiver and/or manager appointed by the Mortgagee as its attorney for the duration of the Security Period for the purposes of doing in its name all acts and executing, signing and (if required) registering in its name all documents which the Owner itself could do, execute, sign or register in relation to the Mortgaged Premises (including without limitation, transferring title of the Vessel to a third party), provided however that such power shall not be exercisable by or on behalf of the Mortgagee until the Mortgage and this Deed shall have become immediately enforceable.

The exercise of such power by or on behalf of the Mortgagee shall not put any person dealing with the Mortgagee upon any enquiry as to whether the Mortgage and this Deed have become enforceable nor shall such person be in any way affected by notice that the Mortgage and this Deed have not become enforceable and the exercise by the Mortgagee of such power shall be conclusive evidence of its right to exercise the same.

**13.   FURTHER ASSURANCE**

13.01   The Owner further undertakes from time to time to execute, sign, perfect, do and (if required) register every such further assurance, document, act or thing as in the opinion of the Mortgagee may be necessary or desirable for the purpose of more effectually mortgaging and charging the Vessel or perfecting the security constituted or intended to be constituted by the Mortgage and this Deed.

**14.   NOTICES**

14.01   Every notice, request, demand or other communication under this Deed shall be given in writing by registered letter, courier, e-mail or fax as specified hereunder or to such other addresses of which the parties may from time to time be given notice. In the case of notices from the Owner, all telefax, e-mail or telex messages shall be confirmed by registered letter or courier posted as soon as practicable thereafter, if so requested by the Mortgagee.

Notices to the Owner shall be sent to:

COMMERCIAL FITNESS CONCEPTS LLC
5510 S 129TH E AVE
Tulsa, Oklahoma 74134

| | |
|---|---|
| Attention: | Brandon Outlaw, Manager |
| Telephone: | 918-294-1054 |
| E-mail: | brandon@commercialfitnessconcepts.com |

Docusign Envelope ID: 8458F45A-9458-4345-A3C8-0A0F7874DD86

Notices to the Mortgagee shall be sent to:

BRIDGECAP EQUITIES LLC
1706 Ave. M
Brooklyn, New York 11230

Attention:    Nissim Ohayon, Principal
Telephone:    (929-263-2295)
E-mail:       [NICK@BRIDGECAPEQUITIES.COM]

### 15.    LAW AND JURISDICTION

15.01  This Deed shall be governed by the laws of The Bahamas.

For the purpose of this Deed and the Mortgage, and any dispute arising thereunder or in connection therewith, the Owner irrevocably submits to the non-exclusive jurisdiction of the courts of the Commonwealth of The Bahamas, but this shall not prevent the Mortgagee from enforcing the Mortgage against the Vessel wherever she may be found.

Any writ or other legal documents may be served on the Owner as aforesaid and/or upon the master of the Vessel.

### 16.    COUNTERPARTS

16.01  This Deed may be executed in any number of counterparts and by the different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original, and all of which taken together shall constitute one and the same instrument.

IN WITNESS whereof the parties hereto have caused this Deed to be executed the day and year first before written.

Signed and Delivered as a Deed                                )
for and on behalf of COMMERCIAL FITNESS CONCEPTS LLC

by _____                          )
Brandon Outlaw, its duly authorised                          )
Manager in the presence of:                                  )

Affirmed 11/26/24

Signature
Printed Name of Notary: Vicki Campbell

[AFFIX NOTARY SEAL]

DocuSign Envelope ID: 84591A5A-0438-4345-A1C8-0A0F787AD1B0

Signed and Delivered as a Deed                          )
for and on behalf of BRIDGECAP EQUITIES LLC

by                                   )
Nissim Ohayon, its duly authorised                      )
Principal in the presence of:                           )

Signature
Printed Name of Notary: John A. Miller

[AFFIX NOTARY SEAL]

OFFICIAL SEAL
JOHN A MILLER
NOTARY PUBLIC-GEORGIA
FULTON COUNTY
My Comm. Expires May 15, 2028