UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**"IN ADMIRALTY"**

CASE NUMBER: 1:25-cv-22149-JB

FAST RESPONSE MARINE
TOWING & SALVAGE, LLC,

Plaintiff,

v.

M/V TNT, a 2023 Tecnomar
Lamborghini 63, *in rem*, and,
COMMERCIAL FITNESS
CONCEPTS LLC, *in personam*,

Defendants,
_______________________________________

BRIDGECAP EQUITIES LLC,
a Delaware limited liability company,

Intervening Plaintiff,

v.

M/Y TNT - one 2023 19.97m Tecnomar
"LAMBORGHINI 63" motor yacht bearing
Official Number Y0208, along with its inventory,
engines, equipment, furnishings, and other
appurtenances, *in rem*, and, COMMERCIAL
FITNESS CONCEPTS LLC, *in personam*,

Defendants,
_______________________________________/

**DEFENDANTS' *DAUBERT* MOTION TO STRIKE**
**REBUTTAL TESTIMONY OF EXPERT MARC HUNDLEY**

Defendants, M/V TNT, a 2023 Tecnomar Lamborghini 63, *in rem*, and COMMERCIAL FITNESS CONCEPTS, LLC, *in personam*, (hereinafter "Defendants"), by and through undersigned counsel and pursuant to Federal Rule of Evidence 702, the applicable Federal Rules

of Civil Procedure, Local Rules of the Southern District of Florida, and this Court's Order [D.E. 129], hereby file this motion and accompanying memorandum of law in support of its *Daubert* Motion to Strike Rebuttal Testimony of Expert Marc Hundley and, in support thereof, state as follows:

## INTRODUCTION

This is a maritime action where Plaintiff FAST RESPONSE MARINE TOWING & SALVAGE, LLC (hereinafter "Plaintiff"), alleges that it is entitled to a maritime pure salvage award for services rendered to the M/V TNT (the "Vessel"). Plaintiff alleges three separate counts of negligence against Defendants: (1) Claim for Pure Salvage Award; (2) Foreclosure of Maritime Lien for Salvage; and (3) Claim for Salvage Award. [D.E. 1 ¶¶ 42-47, 48-53, 54-58].

Plaintiff retained Marc Hundley as an expert. He has offered certain opinions in a report dated June 5, 2026, and a rebuttal report dated July 6, 2026. In his initial report, Mr. Hundley offers opinions as to "his independent repair assessment & his line-item review regarding the 2023 Tecnomar Lamborghini 63' Sport Yacht bearing HIN: ITTSGLY11DA223 including performing a detailed review of a repair assessment provided by Foster's Yacht Services." [*See* Plaintiff's Expert Witness List, attached hereto as "Exhibit A", p. 3]. Further, Mr. Hundley plans to testify regarding "his independent Pre-Loss Fair Market Valuation regarding the Subject Vessel." *Id.* In his initial report, Mr. Hundley's assessment is solely limited to monetary evaluations of the Vessel, areas in which he is qualified to testify.

However, in his rebuttal report, Mr. Hundley offers opinions regarding the "technical opinions, testing methodology, and conclusions detailed in Captain Rolando E. Santos, Jr.'s report." [*See* Plaintiff's Rebuttal Expert Witness List and Marc Hundley's Rebuttal Report, attached hereto as Composite "Exhibit B", p. 4]. Mr. Hundley's opinion on Captain Santos, Jr.'s

report is misplaced, as Mr. Hundley is not an engineer, not a marine surveyor, and has no specialized training in the discipline. Furthermore, Mr. Hundley's opinions are pure *ipse dixit* and are not based upon any scientific methodology or applicable rules, regulations, or standards.

As explained more fully below, Mr. Hundley's rebuttal opinions were not formulated through the application of reliable principles and methods, they are based on inaccurate and irrelevant information, and they are grounded on unsupported speculation and conjecture. Moreover, they invade the province of the trier of fact. Accordingly, Mr. Hundley's rebuttal opinions addressing Captain Santos Jr.'s technical opinions, testing methodologies, and conclusions set forth in "Exhibit B" should be excluded from the trial in this matter.

## MEMORANDUM OF LAW

### I. The Admissibility Of Expert Testimony Under Rules 702, 703, And *Daubert*.

The district court serves as a gatekeeper to the admission of scientific testimony by ensuring that "speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (*quoting McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1256 (11th Cir. 2002)). In determining the admissibility of expert evidence, the court engages in a rigorous three-part inquiry pursuant to *Daubert*, its progeny, and Fed. R. Evid. 702. Relevant expert testimony is admissible only if the trial court finds that:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1107 (11th Cir. 2005) (quoting *United States v.*

*Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)); *see also Daubert*, 509 U.S. at 589. The Eleventh Circuit has referred to these requirements as the "qualification," "reliability," and "helpfulness" prongs, and although there may inevitably be overlap, the three prongs remain distinct concepts that must be individually analyzed. *Frazier*, 387 F.3d at 1260. Moreover, "[t]he burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp*., 184 F.3d 1300, 1306 (11th Cir. 1999). "Thus, the proponent must demonstrate that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact." *United States v. Masferrer,* 367 F.Supp.2d 1365, 1372 (S.D. Fla. April 29, 2005) (interpreting *Allison*, 184 F.3d at 1306).

Rule 702 also requires that the evidence or testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "This condition goes primarily to relevance." *Daubert*, 509 U.S. at 591. This "consideration has been aptly described … as one of 'fit'" *Id.* Rule 702's "helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 591-592. The Court in *Daubert* concluded that Rule 702 "clearly contemplates some degree of regulation of the subjects about which an expert may testify." *Id.* at 589. Regarding the trial judge's "gatekeeper" role, the Court wrote:

> Faced with a proffer of expert scientific testimony… the trial judge must determine at the outset, pursuant to Rule 104(a), whether an expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue.

*Id.* at 592-93. The *Daubert* Court held that these matters should be established "by a preponderance of proof," *Id.* at 593, n.10, and identified some "general observations," relevant to the proponent's burden, while acknowledging that the factors it identified were not all-inclusive. *Id.* ("many factors


McALPIN FLOREZ MARCOTTE, P. A.
9130 S. DADELAND BOULEVARD, SUITE 1900, MIAMI, FLORIDA 33156 * TEL (305) 810-5400 * FAX (305) 810-5401

will bear on the inquiry").

In addition to the three "prongs" above, there is also a fourth pervasive criterion for admissibility. As "gatekeeper" the trial judge should not allow all proffered expert evidence to pass before the factfinder. Because expert testimony may be assigned "talismanic significance" in the eyes of lay jurors, the district court must take care to weigh the value of such evidence against its potential to mislead or confuse. *Frazier*, 387 F.3d at 1263. Thus, the final step in the *Daubert* inquiry is to weigh the expert's testimony under Federal Rule 403, which permits exclusion if its probative value is outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. *Daubert*, 509 U.S. at 569; *see also* Fed. R. Evid. 403. If the probative value is substantially outweighed by the potential to confuse or mislead the jury, or if the testimony is cumulative or needlessly time-consuming, expert opinions may be excluded under Fed. R. Evid. 403. *See id*. Indeed, weighing possible prejudice against probative force under Rule 403, the judge exercises more control over experts than over lay witnesses. *See Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962).

In the instant matter, the proper foundation for the admission of the rebuttal expert testimony of Marc Hundley has not been established as Plaintiff has failed to demonstrate his qualifications, reliability, or helpfulness to the jury by a preponderance of the evidence. As explained more fully below, Mr. Hundley is not qualified to testify to Captain Santos Jr.'s technical opinions, testing methodologies, and conclusions as done so in his rebuttal report. Further, as a separate and independent basis for exclusion, the opinions and conclusions contained in Mr. Hundley's rebuttal report fail to satisfy the requirements of Rules 702, 703, and *Daubert*. Accordingly, his opinions should be stricken.

## II. Qualification: Marc Hundley Is Not Qualified to Opine As A Rebuttal Expert.

Marc Hundley is not a member of the Society of Accredited Marine Surveyors ("SAMS"), the National Association of Marine Surveyors ("NAMS"), or any other recognized industry organization. [*See* Marc Hundley's Curriculum Vitae, attached hereto as "Exhibit C"]. Rather, Mr. Hundley is a marine appraiser whose opinions make no reference to any scientific methodology used, applicable standards, rules, or regulations applicable to the opinions he provides. Wherefore, Mr. Hundley's rebuttal opinions as to Captain Santos Jr.'s technical opinions, testing methodology, and conclusions should be stricken. [*See* Captain Rolando Santos, Jr.'s Expert Report, attached hereto as "Exhibit D"].

"Determining whether a witness is qualified to testify as an expert requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012). Mr. Hundley is not qualified to provide technical opinions on the methodology and conclusions used by Defendants' expert in his report. Mr. Hundley has no formal training or certification in marine surveying, nor has Mr. Hundley identified any scientific publications or methodology used in formulating his opinion. The totality of Mr. Hundley's rebuttal report as it pertains to Captain Santos Jr.'s conclusions based upon his testing are pure *ipse dixit* without any basis.

Moreover, nothing in the record establishes that Mr. Hundley has the knowledge, skill, experience, training, or education necessary to evaluate the methodologies or conclusions set for in Captain Santos, Jr.'s report. *See* Fed. R. Evid. 702(a). To the contrary, Mr. Hundley's own curriculum vitae confirms he has none. [*See* "Exhibit C"]. His educational background consists of a degree in "General studies" and "Studies in Business Law"; his listed technical training is limited to "heavy duty machinery and equipment" and the "effects of metal corrosion"; and his

professional affiliations relate solely to marine appraisal organizations, and previous memberships with the ABYC and the National Fire & Protection Association. [*Id.* at 1]. Nothing in this background, degree, training, or affiliation, bears any relationship to the technical opinions, testing methodology, or conclusions Captain Santos Jr. reached, and nothing in it qualifies Mr. Hundley to critique them.

"[T]he level of expertise may affect the reliability of the expert's opinion." *In Re Paoli R.R. Yard PCB Litig.*, 35 F.2d 717, 741 (3d Cir. 1990). An opinion not based on any standard "amounts to a personal opinion that is outside the proper scope of his expert testimony." *In re Trasylol Prods. Liab. Litig. – MDL-1928*, 2010 U.S. Dist. LEXIS 139968, at *166 (S.D. Fla. 2010). Mr. Hundley lacks the requisite qualifications in any relevant area of expertise, so his testimony amounts to mere personal opinions. This alone should suggest a lack of intellectual rigor and reliability, ending this *Daubert* inquiry without the need to proceed further. Given the lack of relevant education, experience, and background, Mr. Hundley is not qualified to rebut the opinions of Captain Santos, Jr., nor provide the conclusions contained in his rebuttal report. Mr. Hundley's opinions as to these findings should therefore be excluded.

## III. Reliability: Marc Hundley Fails To Satisfy The Methodology Standards Of *Daubert*.

As a second, independent basis for exclusion, Mr. Hundley's rebuttal opinions should be excluded because they are not based on a reliable methodology. Pursuant to Rule 702, an expert witness may testify in the form of an opinion or otherwise, if: (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702; *see also Rink*, 400 F.3d at 1297 n.6. In considering the reliability of the method used by an expert to reach his conclusions, "the court must undertake an independent analysis of **each step** in

the logic that leads to the expert's conclusions; if the analysis is deemed unreliable at **<u>any step</u>**, the expert's entire opinion must be excluded." *Hendrix v. Evenflo Co., Inc*. 255 F.R.D**.** 568, 578 (N.D. Fla. 2009) (citing *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1245 (11th Cir. 2005)) (emphasis added); *see also Holland v. Walter Kidde Portable Equip*., 2008 U.S. Dist. LEXIS 109981, at *25 (N.D. Ala. Mar. 24, 2008) (noting that where an expert's opinions are based on insufficient facts or data, it is scientifically unreliable); *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004) ("an expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions."); *Browder v. General Motors Corp*., 5 F. Supp. 2d 1267 (M.D. Ala. 1998) ("basing an 'expert' opinion on facts not in evidence is not helpful to the trier of fact in understanding the evidence or determining a fact in issue.").

An expert's testimony must be based on facts which enable us to express a reasonably accurate conclusion (as opposed to conjecture or speculation). "Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all." *Guillory v. Domtar Indus., Inc.,* 95 F.3d 1320, 1331 (5th Cir. 1996). "[T]o be permissible the expert must be in possession of the necessary facts which will allow the expert to form an accurate conclusion." *D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, 411 F. Sup. 2d 483, 488 (D.N.J. 2006); *see also Stecyk v. Bell Helicopter Textron, Inc*., 295 F.3d 408, 414 (3d Cir. 2002) ("it is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record."); *Greenwell v. Boatright*, 184 f.3d 492, 497 (6th Cir. 1999) (expert testimony "is inadmissible when the facts upon which the expert bases his testimony contradict the evidence."). Under *Daubert,* the Court must keep out evidence that is "unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." *Allison,* 184 F.3d at 1300, 1311-12.


McALPIN FLOREZ MARCOTTE, P. A.
9130 S. DADELAND BOULEVARD, SUITE 1900, MIAMI, FLORIDA 33156 * TEL (305) 810-5400 * FAX (305) 810-5401

**a. Mr. Hundley's Rebuttal Report Is Devoid Of Relevant Factual And Analytical Support.**

Expert testimony cannot be based on speculation. *Daubert,* 509 U.S. at 589; *Allison,* 184 F.3d 1300, 1316-17 (11th Cir. 1999) ("Under the regime of *Daubert* … a district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist."). "An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000); *see also Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1142 (3d Cir. 1990) (expert opinion that assumes facts not supported by the record should be disregarded); Fed. R. Evid. 702 advisory committee's note (2000 amends.) ("The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted.").

Even a qualified expert may not offer opinions unless they result from the application of a thorough and reliable methodology. *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999) (an expert must employ in the courtroom "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"). The test for admissibility is simply whether the "particular opinion is based on valid reasoning and reliable methodology." *Kannankeril v. Terminix International Inc.*, 128 F.3d 802, 806 (3d Cir. 1997). Here, Mr. Hundley's rebuttal opinions are not based upon sound methodology.

The Rules require that an expert report provide a statement not only of an expert's opinions but also the "basis and reasons" for them. *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007). Opinions "in the form of conclusory statements devoid of factual or analytical support [are] simply not enough" to meet Plaintiff's burden. *R&R Int'l, Inc. v. Manzen, LLC*, 2010 U.S. Dist. LEXIS 94550, at *25 (S.D. Fla. 2010). Indeed, the Court's gatekeeping function requires more


McALPIN FLOREZ MARCOTTE, P. A.
9130 S. DADELAND BOULEVARD, SUITE 1900, MIAMI, FLORIDA 33156 * TEL (305) 810-5400 * FAX (305) 810-5401

than merely "taking the expert's word for it." Fed. R. Evid. 702 advisory committee notes (2000 amends.) To be sure, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire*, 526 U.S. at 152 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Mr. Hundley's rebuttal report is replete with conclusory statements such as "the trapped seawater was 'slack' and free to move, creating an active stability issue and a dangerous shifting weight that can increase the risk of a hull roll . . ." [*See* "Exhibit B", p. 20]. This opinion is provided without any calculation as to the free surface correction and no estimate of water volume. This opinion also fails to reference to any stability standard (i.e., USCG stability regulations, ABYC, SNAME, etc.) and his application of this principle is completely misunderstood. Furthermore, Mr. Hundley states that "[a]ny free flow movement of water inside can roll a vessel" which is a technical conclusion resting upon nothing but his say-so. [*Id.* at. 19].

On multiple occasions, Mr. Hundley claims that Captain Santos, Jr. departed from a "standard": "Standard emergency damage control protocols mandate that high-flow pumps must be deployed and operated continuously"; "misrepresents the standard protocols of a marine casualty assessment."; "a fundamental distortion of standard marine casualty assessment." [*Id.* at 20, 21, and 22, respectively]. Despite asserting departure from these "standards," Mr. Hundley never cites what these "standards" are. An expert who invokes "standards" as his methodology, without saying what the standard is or where it comes from, has given the Court nothing to test, which is exactly what Rule 702 requires the Court to be able to do.

Mr. Hundley's rebuttal report is full of absolute conclusory language based solely upon his visual inspection of the vessel. The report includes: photos of corroded cable transits which "conclusively confirm water ingress was occurring"; salt deposits and a corroded bronze fitting

which provide "definitive physical evidence of a saltwater flow"; and minimal factors which "conclusively confirm the bulkhead lacked hydrostatic isolation" [*Id.* at 10, 13, and 6, respectively]. In none of these examples does Mr. Hundley explain how he distinguished flooding-event water intrusion from the Vessel being exposed to marine humidity, condensation, or rain during the salvage/towing/arrest period during the five months following the incident prior to the inspection.

Mr. Hundley's critiques of Captain Santos, Jr.'s methodology are not based on any of his own testing, rather just plain assertions. Mr. Hundley states that Captain Santos, Jr.'s "unpressurized method failed to generate the hydrostatic or atmospheric forces required to properly test mechanical seals," but makes no reference to what standard forces are required. [*Id.* at. 8]. Mr. Hundley repeatedly states that the fog test conducted by Captain Santos, Jr. was a "novelty test." [*Id.* at 7-9]. Despite this claim, fog/smoke tests are common tests in the maritime industry to test the integrity of potential engine room pathway breaches forward of the engine room into living spaces. The methodology that was used by Captain Santos, Jr. is outlined in his report. [*See* "Exhibit D", p. 4-5]. Mr. Hundley further fails to provide what pressure, test protocol, or what published method would validly simulate 4-8 feet of hydrostatic head on a bulkhead seal, ultimately criticizing Captain Santos Jr. for lacking a valid methodology while failing to offer a contrary one. Mr. Hundley further attempts to state that Captain Santos, Jr. "omitted to document that fog migration was actually observed occurring forward of the bulkhead during testing." [*See* "Exhibit B", p. 7]. No such omission took place, in fact, Captain Santos, Jr. stated in his report that "[n]o fog penetrated via the engine room water-tight bulkhead or the Roxtec cable transit system into the storage/electrical room, crew quarters, or forward cabin, galley and lounge area." [*See* "Exhibit D", p. 9]. Despite refuting Captain Santos, Jr.'s findings, Mr. Hundley even admits in his

rebuttal report that he was precluded from "a direct visual line of sight to see where the fog was actually coming through the structure." [*See* "Exhibit B", p. 8].

Mr. Hundley's rebuttal opinions regarding the technical opinions, testing methodologies, and conclusions used by Captain Santos are subjective, speculative, and unreliable. Mr. Hundley fails to identify and/or utilize a scientific method which objectively explains how he reached his conclusions. Mr. Hundley's opinions are also based upon a number of assumptions not supported by the evidentiary record. Mr. Hundley attempts to rebut Captain Santos Jr.'s stability analysis with a physics-based conclusion that "Internal Water Movement Endangered the Vessel's Stability." [*Id.* at 17]. Despite this assertion, the presence of water movement exists at all times on a vessel (via fuel tanks, water tanks, bilge water, etc.), and this opinion is provided without any stability calculations or free surface correction calculations to prove the Vessel was at risk of capsizing. Further, the empirical evidence (video of the incident) shows that the Vessel remained floating and upright, with positive stability and no signs of lolling or at risk of capsizing. [*Id.* at 29].

Opinions based on mere possibilities are generally considered too speculative to survive *Daubert* admissibility standards. *Chiverton v. Johnston*, 2004 U.S. Dist. LEXIS 20875, at *22 (D.V.I. 2004) (citing *Schulz v. Celotex Corp.*, 942 F.2d 204, 208-09 (3d. Cir. 1991)). "If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *Frazier*, 387 at 1261. Here, Mr. Hundley's rebuttal report and opinions are not tethered to any discernible standard or supported date; rather, they are based solely on *ipse dixit*.

Expert reports that do not discuss the expert's reasoning and thought process that lead to the ultimate opinions, can be stricken. *See Elder v. Tanner*, 205 F.R.D. 190, 193 (E.D. Tex. 2001).


McALPIN FLOREZ MARCOTTE, P. A.
9130 S. DADELAND BOULEVARD, SUITE 1900, MIAMI, FLORIDA 33156 * TEL (305) 810-5400 * FAX (305) 810-5401

An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process. *See e.g., McMahon v. Bunn-O-Matic Corp.*, 150 F. 3d 651, 658 (7th Cir. 1998). A "conclusion without any support is not one based on expert knowledge and entitled to the dignity of evidence." *Navarro v. Fuji Heavy Indus., Ltd.*, 117 F.3d 1027, 1031 (7th Cir. 1997). Without any explanation or factual basis, Mr. Hundley's rebuttal report is little more than a series of his personal opinions, unsupported by reference to any evidence or objective standards. Therefore, Mr. Hundley's rebuttal report should be stricken.

**b. Mr. Hundley's Opinions Are Based Upon Unreliable And Unsubstantiated Information.**

Mr. Hundley opines, again, without explanation that Captain Santos, Jr. "cannot simulate the immense seawater pressure exerted on the bulkhead when submerged in depths ranging between 4 and 8 feet." [*See* "Exhibit B", p. 8]. In support thereof, as done throughout the rebuttal report, Mr. Hundley provides no calculations as to this "immense pressure." Mr. Hundley states that "[s]tandard emergency damage control protocols mandate that high-flow pumps must be deployed and operated continuously upon arrival until a breach is located and secured." [*Id.* at 20]. This assertion fails in two ways: (1) Mr. Hundley again provides no explanation as to what the "[s]tandard emergency damage protocol" is and (2) completely ignores the fact that the video evidence of the incident shows the salvors stopped pumping even before the Vessel was beached. Mr. Hundley provides no calculations of the discharge rate of the pump versus the ingress rate of the water, or even how much volume of water would need to be discharged to overcome the volume of water in the engine room that was freely communicating with the sea.

Mr. Hundley's mischaracterizations extend beyond a lack of methodology to misstatements of the very record he purports to rebut. Mr. Hundley attempts to undermine Captain Santos, Jr.'s opinions regarding environmental and weather hazards. Mr. Hundley states that


McALPIN FLOREZ MARCOTTE, P. A.
9130 S. DADELAND BOULEVARD, SUITE 1900, MIAMI, FLORIDA 33156 * TEL (305) 810-5400 * FAX (305) 810-5401

"Santos' weather argument relies on data obtained from a residential weather station on Hibiscus Island." [*Id.* at 23]. This assertion that Captain Santos, Jr. only relies on the weather underground station is categorically false, as Captain Santos, Jr. used this as a supplement to Ventusky, which uses several data sources, including the National Oceanic and Atmospheric Administration. [*See* "Exhibit D", p. 10-15]. Further, in support of his claims, Mr. Hundley uses weather data from Miami International Airport to establish the weather that was occurring at the location of the incident, Monument Island. [*See* "Exhibit B", at 25]. This weather station used by Mr. Hundley is approximately 10 miles from where the incident occurred, bearing little correlation to the weather at the incident location.

Mr. Hundley repeatedly categorizes the waters around Monument Island as "open waters," yet a review of a map depicting Monument Island and the incident location reveals an inland waterway sheltered by surrounding land and structures, not open water [*See id.* at 25, 27, and 29]. Mr. Hundley goes further still, asserting that because the Vessel was aground, it could not "freely pivot or 'weathervane' with the elements, exponentially increasing structural twisting," but provides no calculations, simulations, or even explanations as to how the Vessel was experiencing "structural twisting." [*Id.* at 27]. None of these opinions are tied to any calculation, testing, or legitimate record evidence. Each opinion is connected to its conclusion by nothing more than Mr. Hundley's own say-so, which is the very *ipse dixit Joiner* holds insufficient to support admission.

**c. Mr. Hundley's Conclusions Are Not Subject To Duplication Through The Scientific Process.**

The Supreme Court in *Daubert* endorsed the scientific method, which consists of generating hypotheses and testing their falsifiability. *Daubert*, 509 U.S. at 579. Thus, the first criterion of a purportedly scientific proposition is the testability of the underlying methods or assumptions. *Id.* at 592-93. Methods that have measurable error rates are more reliable than those


McALPIN FLOREZ MARCOTTE, P. A.
9130 S. DADELAND BOULEVARD, SUITE 1900, MIAMI, FLORIDA 33156 * TEL (305) 810-5400 * FAX (305) 810-5401

that do not, and quality control processes that prevent errors are usually required. *Id.* In evaluating proposed expert testimony, trial judges must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. Thus, an expert must be able to articulate an identifiable methodology or decisional process and also an explanation as to how that process was applied to the facts of a case in order to reach the expert opinions to be presented to a jury.

Although statistical studies may be used to show a cause-and-effect relationship (as occurred in *Daubert*), the study must meet all of the *Daubert* criteria and also be capable of reliable application to the facts of the case in which the expert seeks to opine. Thus, courts must evaluate "the reasonableness of using such an approach, along with [the expert's] particular method of analyzing the data thereby obtained, to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant." *Kumho Tire*, 526 U.S. at 153-54.

Here, even if we consider the scientific method in the broadest possible terms, there is nothing to suggest that Mr. Hundley's conclusions would or could be replicated in any statistically significant way. Mr. Hundley does not reference any applicable standards, rules, or regulations as it pertains to his findings in response to Captain Santos, Jr.'s report. He fails to use any methodologies to support his naval calculations and repeatedly uses conclusory language with no support to emphasize his "findings." The threshold explanation as to the decision-making process and methodology he employed is lacking in his rebuttal report. Thus, also lacking is any suggestion that another expert would be able to reach the same results. There is no showing that the methodology employed by Mr. Hundley is capable of reliable application to the facts of this case or that the same conclusions are likely to be duplicated in future studies.


McALPIN FLOREZ MARCOTTE, P. A.
9130 S. DADELAND BOULEVARD, SUITE 1900, MIAMI, FLORIDA 33156 * TEL (305) 810-5400 * FAX (305) 810-5401

Mr. Hundley's ultimate conclusion impermissibly requires an unscientific "leap of faith." *Valencia v. Sanborn Mfg. Co.*, 2005 U.S. Dist. LEXIS 47653, at *21 (S.D. Fla. Aug. 11, 2005). "Leaps of faith" unsupported by good science preclude the admission of expert testimony. *Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002). Without explanation or factual basis, Mr. Hundley's rebuttal conclusions require "leap[s] of faith" that Captain Rolando Santos, Jr. was incorrect in his technical opinions, testing methodologies, and conclusions. Such opinions lacking a reliable factual and scientific foundation do not help the jury and the Court should have no difficulty discerning that the rebuttal report is all bark and no bite. Mr. Hundley's rebuttal opinions should be stricken.

**IV. Helpfulness. Mr. Hundley's Opinions Are Not Helpful And Misleading.**

To the extent that Mr. Hundley opines that the Vessel "remained in a continuous state of acute marine peril until the Salvor located all points of water ingress to successfully seal them," and that "the Vessel was in clear, immediate marine peril, and the Salvor's actions successfully preserved a high-value asset from catastrophic loss," his opinion impermissibly invades the province of the trier of fact. ["Exhibit B" at 21, and 29, respectively]. An expert witness may not testify regarding ultimate legal conclusions. *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). "Marine peril" is not merely a factual observation, it is an indispensable element of a maritime salvage claim, without which Plaintiff cannot recover a salvage award at all. *The Sabine*, 101 U.S. 384 (1879) ("[t]hree elements are necessary to a valid salvage claim: (1) A marine peril. (2) Service voluntarily rendered when not required as an existing duty or from a special contract. (3) Success in whole or in part, or that the service rendered contributed to such success.") Therefore, these opinions should be stricken.

Next, proffered expert testimony generally will not help the jury when it offers "nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 at 1262-63.



McALPIN FLOREZ MARCOTTE, P. A.
9130 S. DADELAND BOULEVARD, SUITE 1900, MIAMI, FLORIDA 33156 * TEL (305) 810-5400 * FAX (305) 810-5401

The Court must keep "unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." *Allison,* 184 F.3d at 1300, 1311-12. Here, Mr. Hundley's opinions are misleading and, given the missing link to any scientific or factual bases, offer nothing more than what Plaintiff's lawyers could argue in their closing arguments.

**V. Mr. Hundley's Rebuttal Opinions Should Be Excluded Under Federal Rule Of Evidence 403, Because Their Probative Value Is Substantially Outweighed By Their Prejudicial Effect.**

Because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403. Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury, or if the expert testimony is cumulative or needlessly time consuming. Indeed, "the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Frazier*, 387 at 1263 (citations omitted). Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse.

Here, Mr. Hundley's rebuttal testimony regarding Captain Santos, Jr.'s technical opinions, testing methodologies, and conclusions should be excluded because the unreliable nature of his testimony is misleading to the jury, especially in light that he refers to it as "technical rebuttal," making it more prejudicial than probative. Because Mr. Hundley failed to utilize reliable scientific methodology and consider relevant factors that drastically alter his conclusions to arrive at his opinions, his testimony has the potential to be extremely misleading. Misleading testimony that has no basis in fact is more prejudicial than probative to the determination of the issues in this case. Because of the risk posed by Mr. Hundley's opinion outweighs its probative value, it would


McALPIN FLOREZ MARCOTTE, P. A.
9130 S. DADELAND BOULEVARD, SUITE 1900, MIAMI, FLORIDA 33156 * TEL (305) 810-5400 * FAX (305) 810-5401

be unfairly prejudicial to Defendants to admit his rebuttal testimony regarding Captain Santos, Jr.'s technical opinions, testing methodologies, and conclusions into evidence.

**WHEREFORE**, for the reasons set forth above, Defendants respectfully request that this Honorable Court enter an Order excluding the rebuttal report of Marc Hundley, in its entirety, including all opinions, testimony, and conclusions contained therein rebutting the technical opinions, testing methodologies, and conclusions of Captain Santos, Jr., and grant any other relief this Court finds just and proper.

**Respectfully submitted,**

By: */s/ Michael Del Duca*
Richard J. McAlpin, Esq.
Florida Bar No.: 438420
rmcalpin@mfm-maritime.com
George S. Florez, Esq.
Florida Bar No.: 127331
gflorez@mfm-maritime.com
Michael Del Duca, Esq.
Florida Bar No.: 1058454
mdelduca@mfm-maritime.com
dduran@mfm-maritime.com
**McAlpin Florez Marcotte, P.A.**
9130 S. Dadeland Blvd., Suite 1900
Miami, FL 33156
Tel: (305) 810-5400
Fax: (305) 810-5401

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on Friday, August 28, 2026, the foregoing document is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing: Barry A. Postman, barry.postman@csklegal.com; justin.edell@csklegal.com; Cole, Scott, & Kissane, P.A., Attorneys

for Plaintiff, 222 Lakeview Ave., Suite 120, West Palm Beach, FL 33417 and Michael Patrick Perry, michaelperry@maritimeattorneys.com; perry@maritimeattorneys.com; Perry Maritime Law Group, P.A. Attorneys for Intervening Plaintiff, 1650 SE 17th Street, Suite 200, Fort Lauderdale, FL 33316.

By: */s/ Michael Del Duca*
Michael Del Duca, Esq.